Treadwell *v.* Van Schaick.

---

JOHN P. TREADWELL and others *vs.* MYNDERT VAN SCHAICK and others.

The Croton aqueduct board has full power under the statutes, and the ordinances of the common council, to make special charges, or fix extra rates, to be paid for the use of the water, varying in each case, according to the quantity used; and to regulate the terms on which extra allowances shall be made, and the conditions on which the water shall be used.

The board has a right to make every such arrangement, respecting an extra supply of water, a matter of agreement, subject to such terms and conditions as it shall deem necessary to impose.

The proper construction of the 27th section of the act of 1849, establishing the board, is that the legislature intended the water should not be furnished to those who would not pay for it; and that the power should exist, in the board, to withhold the supply, if the terms on which the supply was furnished were not complied with.

The board therefore has power to cut off the supply of water, for non-payment of the water-rate; whether it be the regular rents, apportioned by the size, character and use of the building, or the extra rents chargeable, in addition to the regular rents, upon buildings which consume an extra quantity of water.

THIS was an appeal, by the plaintiffs, from an order made at a special term, dissolving an injunction, and dismissing the plaintiffs' complaint, with costs.   The court found among

Treadwell *v.* Van Schaick

other facts, the following: That the plaintiffs' hotel and wash house used and consumed during the water year 1855, from May 1st, 1855, to May 1st, 1856, 36,072,744 gallons of Croton water; that the defendants, under the laws of the state and the ordinances of the city, as the officers and agents of the corporation, charged the plaintiffs one cent per 100 gallons for the water so used, and that the charge so made amounted in the aggregate to the sum of $3606.26. That they notified the plaintiffs, on or about the 18th January, 1856, that unless they immediately paid that sum, the defendants would cut off the Croton water from their hotel. That the plaintiffs' hotel has in water closets, baths, wash-hand basins, and otherwise, the number of 800 faucets, or taps, or discharge pipes, and that it accommodates 1000 lodgers; that there is in use in the hotel one steam engine supplied with Croton water, and used in part in forcing Croton water to the top of the hotel, into tanks, to supply the stories of said hotel above the second; that there is a bar room attached to said hotel; that the water used at the Astor House is measured by the same kind of meters, and charged for at the same rate, as that used at the plaintiffs' hotel; that the Croton water supplied to all the large hotels and manufactories in the city, to the number of 80, is measured by the same kind of meters used in the plaintiffs' hotel. To these findings of facts no exceptions were taken by the plaintiffs.

It also appeared in evidence that the Croton aqueduct department had established the following "Rules, regulations and penalties," which were printed on the back of each permit issued, for the use of the water:

"1. No tenant will be allowed to supply water to other persons or families for other than domestic purposes; if found doing so, the supply will be stopped, and the amount of payment forfeited.

2. No addition or alteration whatever, in or about any conduit, pipe or water-cock, shall be made or caused to be made,

by persons taking the water, without notice thereof being previously given to, and permission had in writing from, the board.

3. All persons taking the water, shall keep their own service-pipes, stop-cocks and apparatus in good repair, and protected from frost at their own expense, *and shall prevent all unnecessary waste of water.*

4. *Street-washers* shall ·be used only before the hour of 8 o'clock in the morning, from the 1st of May to the 1st of November, and before 9 o'clock in the morning, from the 1st of November to the 1st of May, and at no subsequent hours of the day or evening, under a penalty of $5 for each offense: and if found out of order, cap off, or leaking, or if converted into jets, or suffered to run when not used, the supply will be cut off without previous notice.

5. No hydrant will be permitted on the sidewalk, or in the front area, and if standing in a yard or alley attached to any dwelling or building, will not be permitted to be kept running when not in actual use; taps at wash-basins, water-closets, baths, and urinals, must be kept closed in like manner.

6. Applications for water must state fully and truly all purposes for which it is required, and when paying the annual charges for it, parties must frankly, and without concealment, answer all questions put to them relating to its consumption. In case of fraudulent misrepresentation on the part of the applicant, or of uses of the water not embraced in his bill, or of willful or unreasonable waste of water, the Croton aqueduct board shall have the right to forfeit his payment, and the supply of water shall be stopped, unless the party shall promptly pay such additional charge as the board may impose.

7. The officers of the department personally, and every person by them delegated for the purpose, must have free access, at proper hours of the day, to all parts of every building and steam vessel in which Croton water is delivered and consumed.

8. The department reserves to itself the right to apply a meter to any such premises as they may deem advisable.

9. The penalty for a violation of any of the preceding rules

Treadwell *v.* Van Schaick.

and requirements, will be the prompt stoppage of the supply of water, without any further or other preliminary notice; nor will it be restored, except upon payment of the expense of shutting it off and putting it on, and upon a satisfactory understanding with the party that no future cause of complaint shall arise."

Annexed to these rules and regulations was the 27th section of the act of the legislature of April 11, 1849, which is in these words:

§ 27. "The rules and restrictions for the use of the water, printed on each permit, shall be notice to the water takers, and shall authorize the exaction and recovery, by process of law, of any penalties which the Croton acqueduct board may impose, in addition to the cutting off the use of the water, for any violation of the rules; and this section shall be printed on such permits."

The judge, at special term, decided as matter of law: 1. That the defendants had a legal right, upon the neglect and refusal of the plaintiffs to pay the extra Croton water rent of $3606.25 for the year ending May 1st, 1856, after the notice given them to do so, to cut off and stop the supply of the Croton water to their hotel. 2. That the defendants were entitled to judgment dissolving the injunction issued in this action, and dismissing the complaint with costs. To these conclusions of law the plaintiffs excepted.

*John Van Buren,* for the appellants. I. The plaintiffs, being corporators and householders of the city of New York, have a legal right to the use of the Croton water, and are bound to pay the taxes therefor imposed upon them by law. (*Davies' Laws of* 1834, *ch.* 256, *p.* 771; *Id.* 1838, *ch.* 127, *p.* 807; *Id.* 1841, *ch.* 306, *p.* 848; *Id.* 1843, *ch.* 231, *p.* 871.)

II. The defendants, being about to deprive the plaintiffs of this use, and thus to cause irreparable injury to them, should be restrained by this court, unless they have shown a legal authority to do the acts which they threaten. (*Voorhis'*

Treadwell *v.* Van Schaick.

*Code,* § 219, *and notes. Eden on Injunctions, Waterman's ed.,* 259 *and* 267, *and notes.*)

III. The rents for the use of the Croton water, both regular and extra, are directed by law to be fixed by the common council, and they have no power to delegate any part of this authority to the defendants. (*Laws of* 1849, *ch.* 383, §§ 18 *and* 19. *Lyon* v. *Jerome,* 26 *Wend.* 485. *Thompson* v. *Schermerhorn,* 2 *Seld.* 92.)

IV. The ordinance of the common council, passed March 20th, 1851, so far as it gives the defendants authority to charge hotels, at their discretion, for the use of water, is void, and the provision of said ordinance, under which the defendants claim to have acted, has no application to the case of the plaintiffs, and is also void.

V. The testimony in this case furnishes no reliable data as to the amount of water consumed by the plaintiffs, nor is there any legal warrant for the manner in which the defendants pretend to have arrived at it,

VI. The statute confers no authority on either the common council or the defendants to cut off the plaintiffs' supply of Croton water, for the non-payment of rent. Where a statute imposes a penalty, and gives a particular remedy, this remedy must be pursued, and excludes all others. (*Sharp* v. *Speir,* 4 *Hill,* 76. *Same* v. *Johnston, Id.* 92. 9 *Pick.* 412. *Gilbert* v. *Columbia Turnp. Co.,* 3 *John. Cas.* 107. *Butler* v. *Palmer,* 1 *Hill,* 334. *Davies' Laws of* 1849, *ch.* 383, §§ 18, 19, to 26, *p.* 983. *Id.* 1851, *ch.* 298, *p.* 1029.)

*Richard Busteed,* for the defendants. I. The franchise of supplying the city of New York with water, is a special private franchise, made as well for the private emolument of the corporation of the city of New York as for the public good. The corporation, in the absence of any legislative conditions or restrictions affixed to the franchise, may manage and control it, and the property connected therewith, by itself and its agents, in the same manner as any rail road, ferry or gas com-

Treadwell *v.* Van Schaick.

pany might manage its franchise. (*Bailey* v. *The Mayor &c. of New York,* 3 *Hill,* 539, 541; *S. C. affirmed,* 2 *Denio,* 450. *See also Appleton* v. *The Water Commissioners,* 2 *Hill,* 433; *Clark* v. *The Mayor &c. of New York,* 3 *Barbour's S. C. Rep.* 290; *S. C.,* 4 *Comstock,* 338.) The corporation, therefore, may themselves fix, or authorize their agents to fix, the rates which shall be charged for the use of the water, the times at which those rates shall be paid, may refuse to supply the water, and may cut it off if the rates are not paid. These powers are obviously incident to the nature of the franchise granted them.

II. The corporation being in a certain sense a local sovereignty, can delegate to its agents such portion of the discretionary power conferred upon it by the legislature for the management of its various franchises, as may be necessary or convenient for it to do, in all cases where the legislature has not expressly, or by implication, required it to act exclusively in its corporate character. And this, in carrying on the city government, it does daily without question.

III. The act of April 11, 1842, in terms, gives the corporation authority to organize the Croton aqueduct department, and to confer upon it full powers for the management of the Croton water works. That act is still in force and that department in existence, and the defendants compose it. The act is a statutory warrant for any discretionary powers in respect to the "extra rents" conferred by the corporation upon the Croton aqueduct board.

IV. The object of § 18 of the ·act of April 11, 1849, (which act was passed on the petition of the corporation itself,) was not to abridge the recognized power of the corporation, and its agents, duly authorized to fix the charges for the use of the Croton water, (for that power had then been exercised for the space of seven years,) but it was simply to enable the corporation, provided they saw fit, by ordinance to establish a certain scale of water rents—to make those rents,

like taxes, a lien on real estate. Their power to fix, directly, or by their agents, rates which should not be a lien upon real estate, was not interfered with by that act; certainly not in cases where large quantities of water were used. (§ 19 *of the act.*) (*a.*) Even then, if the corporation had delegated to the Croton board the power to fix the "regular" rents, the consequence would be, not that the rents fixed under that delegated power would be invalid, but that they would have failed to become a lien on real estate. (*b.*) This act was passed for the exclusive benefit of the corporation, and they were not obliged to act under it. In point of fact, for nearly two years they neglected to avail themselves of this statute, and continued their charges under the ordinances of September 7, 1842.

V. But the charge in question was not made at the discretion of the Croton board. The clause of the ordinance under which it was made, fixed the charge at one cent per one hundred gallons. The discretionary portion of this clause may be rejected. An ordinance may be void in part, and good for the rest. (2 *Kyd on Corporations, p.* 155. *Rogers* v. *Jones,* 1 *Wend.* 260. *State* v. *Synes,* 4 *Indiana Rep.* 351.)

VI. An inspection of § 19 of the act of April 11, 1849, and of the clause of the ordinance of March 20, 1851, which refers to hotels, and the clause of the same ordinance, under which the charge was made in this case, it is submitted, will show that where hotels use two hundred gallons of water per day, the common council intended they should be charged according to the number of gallons of water actually used. (*a.*) This was not simply a hotel, but a large laundry, liquor bar, steam engine house and hotel combined together. (*b.*) If by an unintentional error the Croton board have made the charge in question, under a wrong clause of the ordinance, the plaintiffs can gain no advantage from such error, unless they show that it has resulted in an undue benefit to the corporation, or prejudice to them; in short, that the error has increased their charge. Until they do this, the error is one

which concerns the corporation alone. (*City of Lowell* v. *Hadley*, 8 *Metc.* 180.)

VII. If the charge was correctly made, there can be no question of the right and duty of the defendants to cut off the water for its non-payment. The ordinance of the corporation, by which the plaintiffs were bound, without express notice of it, (2 *Kyd on Corporations*, *p.* 103,) so directs, in terms, and it was the only effectual mode of enforcing payment, these extra rents not being a lien on the property.

VIII. The Croton board had a right, if the corporation had made no provision, or none that was effectual to meet this case, to make the charge in question, and to cut off the water for non-payment of it, under the general powers conferred upon them by the act of April 11, 1842, and the ordinance under it, and by the acts of April 2d and 11th, 1849, and their rules established under those acts. They were the agents of the defendants, and bound to take care of their interest, independent of any statutes.

IX. The relief that the plaintiffs demand in their complaint is, that the court should ascertain what would be a just and equitable charge to be made against them in the premises. This the court has in substance done, and has found as a matter of fact that the charge made by the Croton board against the plaintiffs in this case is a just, fair and equitable one. And to this finding the plaintiffs have taken no exception, and they are bound by it.

X. This action, in any view of the case, has been misconceived. The plaintiffs have had the use and benefit of the water, and are bound to pay a fair price for it. The price fixed by the corporation being impartial and uniform towards all water takers, it would be a usurpation on the part of the courts to attempt to interfere with that price, as clearly as it would be for them to interfere with the rates of charge for market stalls or ferry franchises. (*a.*) There is a discretion and a confidence in these cases which the legislature has reposed in the common council, and not in the courts. (*b.*) The

corporation, being the real party in interest, ought to have been made a defendant in the action in the first instance, and then most of the points in the case could not have arisen.

*By the Court,* INGRAHAM, J. The defendants, being the members of the Croton aqueduct board, are prosecuted by the plaintiffs, who are proprietors of the St. Nicholas Hotel, to prevent them from cutting off the supply of Croton water, for non-payment of the amount charged for the use of the same.

It appears from the evidence, that in 1853 the plaintiffs paid for the use of the Croton water the sum of $1264.16, and for the year 1854, $1545.75. That in 1855 the defendants attached meters to the pipes leading to the premises of the plaintiffs, for ascertaining the quantity of water used by them, and that the result of such examination proved that in 96 days, between July and November, the water used by the plaintiffs exceeded 8,000,000 of gallons ; and that the whole amount of water used on the premises of the plaintiffs from May 1, 1855, for one year, exceeded 36,000,000 of gallons. For this quantity of water the defendants claimed, for that year, at the rate of one cent for every 100 gallons of water. This the plaintiffs refused to pay, and in consequence of such refusal the Croton board notified the plaintiffs that they would stop the supply of water. The plaintiffs thereupon commenced this action, and obtained an injunction against the defendants. Upon the trial of the action Mr. Justice Roosevelt held that the defendants were justified, on the refusal of the plaintiffs to pay the amount claimed, after notice given them, to cut off and stop the supply of water, and that the defendants were entitled to judgment, and a dissolution of the injunction. The plaintiffs excepted to these rulings. Upon the argument of this case it was urged, on the part of the plaintiffs, that the Croton board had no authority to cut off and stop the supply of water ; and that the Croton board had no authority to charge at the rate claimed for the water used by the plaintiffs.

It can hardly be necessary to examine the question whether in an ordinary case of a private dwelling, where the amount charged for the water becomes a tax on the land, and is to be paid whether water is used or not, the Croton board has authority to stop the supply of water. The whole argument of the plaintiffs is based on this proposition, and the claim is presented that being corporators and householders, they have a right to the water, and are bound to pay the tax therefor.

The money for building the works, for the supply of the city with water, was raised by a loan forming a debt of the city until paid, and it never could have been intended that such debt was to be left without means to be provided for its payment. The plaintiffs concede their liability as holders of the property for such tax as may legally be imposed on the land, although no such provision was made until long after the aqueduct was completed. The act of 1843 provided for raising by tax a sum equal to the payment of the interest, annually.

By the act of 1849, establishing the Croton aqueduct board, the common council were authorized by ordinance to establish a scale of annual rents for the supply of the Croton water, to be called the "regular rents," apportioned to different classes of buildings, and such regular rents were to become a charge or lien upon the houses and lots respectively. (*Davies' Laws, p.* 984.)

The expressions there used show that the rents intended were such as were applicable to classes of buildings throughout the city, and were to be ascertained by the size of the building rather than its occupation. Such charges were to be universal, and of an uniform rate, wherever the pipes were laid. By the 19th section, buildings and establishments which consume extra quantities of water, in addition to the regular rents might be charged with additional rents, to be called "extra rents."

By the 21st section, a list of the regular rents imposed is to be prepared, and the same is to remain a lien on the premises

until paid. By the act of 1851, such arrears are to be col-
lected in the manner therein specified, viz. by a sale of the
property. And by the 9th section of the act of 1853, (*Da-
vies' Laws, p.* 1146,) further provisions are made for the col-
lection of the "regular rents."

The examination of these statutes shows conclusively that
no provision exists making a charge for Croton water a lien
upon property, except such as is included in the term "reg-
ular rents ;" and that the payments provided for in the 19th
section, for what is therein termed "extra rents," are not in
any way made a lien upon the land, but must be collected by
some other process.

It appears also from these statutes that the common coun-
cil are to establish a scale of rents, which are to be called the
regular rents, but that authority does not necessarily apply to
the common council alone, as to the extra rents. The section
authorizing such extra rents does not contemplate that such
rates are to be fixed by them; but on the contrary, the fair
presumption is that such charges are to be fixed by the board,
varying in each case according to the quantity to be used. If
this be so, then the right necessarily follows that they should
regulate the terms on which such extra allowances should be
made, and the conditions on which the water should be used.
If, for instance, some large factory or other institution should
see fit to require a supply of water so large as to consume
more of the water than could be spared from the ordinary
consumption of the city, without exposing the inhabitants to
danger from such an over use of the water, no one for a mo-
ment would suppose that the Croton board had not authority
to refuse such supply. Other instances might be given where
such a power was necessary to be placed in the board, for the
proper administration of the whole department ; and the only
rational interpretation of the whole statute, taken together, is
that the Croton board has a right to make every such arrange-
ment, as to extra supply of water, a matter of agreement,

subject to such terms and conditions as the board shall deem necessary to impose.

If the use of an extra supply of water is to be considered as a special agreement, then the breach of that agreement on the one side by non-payment, justifies the board in refusing any longer to comply with such agreement on their part, and of course justifies them in declining to furnish the water after such breach on the part of the taker. This would be entirely independent of any sanction that might be given by the statute to such a course. In the 27th section of the same act it is provided that rules and regulations for the use of the water, printed on the permit, shall authorize the recovery of penalties, in addition to the cutting off the water, for any violation of the rules, &c.

There is no special provision in the act authorizing the cutting off the water, excepting so far as is contained in this section. It is clear that for some purpose such power was conceded to exist, and I think the proper and only construction to be given to this section is, that the legislature intended the water should not be furnished to those who would not pay for it, and that the power would exist in those who had charge of this department to withhold the supply, if the terms on which such supply was furnished were not complied with. The words, " in addition to the cutting off the water," used in that section, is not to be applied merely to the penalties for violating those rules, but are rather to be considered as conferring a general power extending to the whole supply of water, and as one of the means by which payment for the use of such water should be enforced.

Under the act of 1842, (*Laws of* 1842, *ch.* 225,) full power was given to the common council to organize the department as well for the management as for the distribution of the water; and such authority necessarily included the right to regulate the use and fix the terms in cases where no special provision by law to the contrary existed. The ruling of the judge upon this point was not erroneous.

The other objection made by the plaintiffs is to the rate charged for the water, and the finding as to the quantity used. My view of this question has been in part expressed in the foregoing portion of this opinion. If the Croton board had authority, as I think they had, to make the use of extra quantities of water a matter of special agreement, then there can be no doubt but that they also had full authority to fix the price to be paid therefor, only to be controlled by the minimum price limited by the common council, and the other provisions of that ordinance. By ordinance of the common council of 1851, the common council authorized the Croton board to charge extra rates for the use of the Croton water in special cases, and vested in the Croton board a discretion in certain cases. This discretion is objected to by the plaintiffs as unauthorized by the statute. I think, however, there is no ground for such objection. So far as relates to the "regular rents," which are to be liens on real estate, it would be objectionable, and no such lien could be created unless the amount was fixed by the common council. I have already shown that these charges are not "regular rents," and can in no event be such liens. Independent of these provisions, there is nothing which requires the common council to fix the rates called "extra rents," and nothing which prevents that power from being conferred upon the Croton board. In the absence of any legislative provision to the contrary, the power given to the common council to organize the board and invest it with necessary powers for the distribution of the water, the provisions of the charter of 1849 continuing the Croton board, with the powers of distributing the water, collecting the revenues from the sale of the water, and such other powers as may be conferred by law, would be ample authority for any such power as has been exercised in the present case. The defendants contended, on the argument, that if it were not, the ordinance referred to authorized expressly a charge of one cent for every 100 gallons used by any business beyond 10,000 gallons per day, and therefore the charge as made by them was

Treadwell *v.* Van Schaick.

authorized by that ordinance, and was so fixed by the common council; and the presiding justice has found that such was the rate at which the charge was made.

I do not think that provision of the ordinance can be resorted to, in aid of this judgment. The authority there given to charge one cent for every 100 gallons, is in a case where the business used more than 10,000 gallons daily. A slight calculation will show that to come within that provision, the establishment must use more than 36,500,000 gallons annually; while, on the trial of this case, the whole amount of the water used during the year was found to be 36,072,744 gallons, or less than the amount required.

But I do not deem it necessary to bring this case within these provisions, in order to sustain the right of the Croton board to fix the extra rates. I am clearly of the opinion that full power exists in the Croton board, under the statutes and ordinances, to make special charges for the use of the water, in special cases for which no rate is fixed by law, and that there is no ground for interfering with the judgment on that account.

The plaintiffs also object to the amount found by the court as the quantity of water used by them during the year. It is a sufficient answer to this objection that this is a question of fact to be found by the court, that the only ground on which we can review that finding is that it is against the weight of evidence, and that no evidence has been inserted in the papers submitted to us on this appeal. We must therefore take the findings of fact, as made by the court, to be correct, and can only look at the questions of law presented on those findings.

The amount of water which the court has found was used during the year, by the plaintiffs, was 36,072,744 gallons, and was less than would have been consumed at the average rate of 10,000 gallons per day. The provisions of that ordinance, so far as applies to a quantity which exceeded that amount, have nothing to do with this case, and there is no charge prescribed in the ordinance applicable to it. It would therefore

come within the discretionary power conferred on the commissioners, and which I have already said they may lawfully exercise. In fixing the rate to be paid, they have adopted the minimum rate prescribed by the common council for the use of a larger quantity. Of this the plaintiffs have no cause to complain. The extra use of the water is not compulsory. If they use it, they should be willing to pay the price which the authorities have stated to be the lowest sum at which the aqueduct department shall furnish such supplies. If not so paid, the course taken by the defendants was one authorized by the law, and necessary for the proper management of the department; and without the remedy there adopted, the department would be remediless.

The judgment should be affirmed.

[NEW YORK GENERAL TERM, December 13, 1859. *Roosevelt, Sutherland* and *Ingraham,* Justices.]