(129 App. Div. 551.)

PEOPLE ex rel. McAULIFFE v. CITY OF NEW YORK et al.

(Supreme Court, Appellate Division, Second Department.  December 30, 1908.)

WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—WATER CHAR-
GES—RATE.

The mandate of New York City Charter (Laws 1901, p. 210, c. 466) §
473, that no charge can be made for water supply by the city except for
water actually used as shown by the meter, allows no charge for water
used during the meter's nonoperation caused by the neglect of the city's
officials, and a charge for such period based on the average consumption
during the meter's operation is unauthorized.

[Ed. Note.—For other cases, see Waters and Water Courses, Cent. Dig.
§§ 290, 292, 294; Dec. Dig. § 203.*]

Appeal from Special Term, Kings County.

Mandamus by the People, on the relation of Elizabeth McAuliffe,
against the City of New York, Herman A. Metz, Comptroller, and
John H. O'Brien, Commissioner of the Department of Water Supply,
Gas and Electricity, to compel the cancellation of a charge for water
consumed by the relator.  From an order granting relator's applica-
tion for a peremptory writ, defendants appeal.  Affirmed.

Argued before WOODWARD, JENKS, HOOKER, RICH, and
MILLER, JJ.

James D. Bell, for appellants.
Alvan R. Johnson, for respondent.

HOOKER, J.  Relator, the owner of premises in the city of New
York, used the city water and paid for it according to the indications
of a water meter.  Between September 15, 1906, and December 10,
1906, the meter did not register any water at all, although water was
supplied to the premises.  On the latter day the meter was taken out
and repaired, and on December 17, 1906, was restored, adequately
repaired.  From December 17, 1906, until April 5, 1907, the meter
was found to have registered 49,700 cubic feet of water.  The water
registrar averaged the consumption of water between the 17th day
of December, 1906, and the 5th day of April, 1907, and has charged
the relator at that rate between the 15th of September, 1906, and the
17th of December, 1906.  The order from which this appeal is taken
directs the commissioner of the department of water supply, gas and
electricity forthwith to cancel and strike from the books of said city
and his department the charge of $42.41, made to cover the latter
period.

It is undisputed that the relator consumed water during that time,
and, if this order is affirmed, it seems at least possible that the owner
of the premises may succeed in resisting any attempt to compel pay-
ment therefor.  However, inasmuch as the provisions of the charter
of the city seem to cover the exact case, it must be disposed of there-
under.  Section 473 (Laws 1901, p. 210, c. 466) and following of the
charter relate to the water rents and to the measurement of water by
meters.  At the option of the consumer, he may pay either according

to a flat rate, which depends principally upon the frontage and number of stories of the buildings upon the premises, or 10 cents per 100 feet, which a meter shows is actually consumed. In this case the meter plan was adopted. Section 473 of the charter provides that:

"No charge whatever shall be made against any building in which a water meter may have been or shall be placed as provided in this act. In all such cases the charge for water shall be determined only by the quantity of water actually used as shown by said meters."

The records show that the city knew that the meter in the relator's premises was not recording the water which passed through it, and instead of compelling the immediate repair of the meter, by turning off the water or otherwise, permitted the condition to exist. The city also knew the provisions of the charter that, after a meter was installed, the charge could be determined only by the quantity of water actually used, as shown by the meter, and it should have been apparent therefore that no charge could be made against the premises, except as indicated by the revolutions of the mechanism of the meter. The neglect of the officials of the city has perhaps given the relator something for nothing, but no one can tell now how much water was actually used during the period of the meter's nonoperation. It is the plain mandate of the charter that no charge can be made except for water actually used as shown by the meter. If the meter showed nothing, the charter seems to allow no charge. The remedy should have been applied at the time the city first discovered the failure of the meter to register, instead of waiting a considerable period and then attempting to make the owner pay an amount which is no better than an estimate and which may be too much or too little.

The order should therefore be affirmed.

Order affirmed, with $10 costs and disbursements. All concur.