PARSONS CONSTRUCTION CORPORATION, Plaintiff, *v.* THE CITY OF NEW YORK, Defendant.

Municipal Court of New York, Borough of Queens, Sixth District, July 26, 1937

*P. Benjamin Kaufman,* for the plaintiff.

*Paul Windels* [*Arthur H. Kerns* of counsel; *Belle G. Kopel* with him on the brief], for the defendant.

PETTE, J.   This action was instituted by the plaintiff to recover from the defendant the sum of $400 which it claims was paid under protest for illegal or excessive water charges in connection with the construction of two six-story apartment houses.

The records indicate that the erection of these buildings was commenced on or about the 21st day of May, 1936, and completed in the latter part of 1936. The water meter in the corner building, $\frac{3}{4}$ in. Thomson No. 1389547, was installed on or about June 1, 1936, and that in the easterly building, $\frac{5}{8}$ in. meter No. 3255304, was installed August 7, 1936. Official permits for both meters were duly issued by the department of water supply for the borough of Queens.

The defendant's brief concedes the proper registration of the water consumption in the corner building down to August 26, 1936, when the index showed a consumption of 23,800 cubic feet. There is a similar concession as to the meter in the easterly building down to September 15, 1936, with a consumption of 200 cubic feet, thus indicating the bulk of water consumption through the meter in the corner building.

Between April 6, 1936, and August 5, 1936, the plaintiff was billed and paid for the water used in the construction of the aforesaid buildings for the approximate sum of $40.50, which sum was the amount taken, presumably, from the reading of the meters.

The defendant continued its readings up to and including September 15, 1936. Thereafter, the defendant's inspector, finding that the meters had been tampered with, the seals broken, etc., permission for the use of the meters was cancelled. The inspector testified to the fact that he found a pipe line running from the water supply in the corner building to the easterly building, and the service pipe line that led into the corner building from the city main line was coupled to this meter, which was located in a pit about thirty inches deep in the cellar of this building.

No reading was obtained subsequent to September 15, 1936.

The commissioner of water supply, from the plans on file in the building department, estimated the total supply of unmetered water consumed by the construction of the two buildings to be the sum of $484.18, credit being given for meter before violation. The charges were based as follows: seven and one-half cents per cubic yard of masonry and sixty cents per hundred square yards of plastering. This sum was paid under protest.

It is the contention of the plaintiff (a) that the seal of the meter in the corner building was broken without its knowledge or consent, (b) that the commissioner of water supply did not have the right to rescind the permits and thereafter fix a charge for the use of water based upon calculation other than meter registry, (c) that there is no section of the city charter, ordinance or other regulation authorizing the charge by the commissioner of water supply, and that by reason thereof it is entitled to a refund.

I find the plaintiff's contention unsupported by the law and the facts herein.

Before indicating the reasons for my opinion, I wish to commend the attorneys for both sides in submitting well prepared and exhaustive briefs, indicating painstaking research.

The city of New York has been, under powers vested in it for many years by statutory enactment, engaged in supplying water to the inhabitants of the city on payment of a charge therefor, and persons are not entitled to water without payment. (*Treadwell* v. *Van Schaick*, 30 Barb. 444.) In the absence of a fixed rate their rights do not go beyond receiving water at reasonable rates without discrimination. (*Silkman* v. *Water Commissioners*, 152 N. Y. 327; *Matter of Chicago & R. A.*, 103 Ill. App. 251; *Kirkham* v. *Russell*, 76 Va. 956.)

The city of New York under the charter is authorized to adopt either of two distinct methods of compensating or reimbursing itself for furnishing water to its inhabitants. The first is by the exercise of the power of taxation; the second, by sale. The board of aldermen is authorized to establish a uniform scale of rates and charges for supplying water to different classes of buildings in the city, with reference to their dimensions, etc. The rates so imposed must be paid regardless of the quantity of water used, or whether any water is used. Such a rate is a tax (*New York University* v. *American Book Co.*, 197 N. Y. 294, 297; *Remsen* v. *Wheeler*, 105 id. 573; *Matter of Trustees of Union College*, 129 id. 308). By section 475, the commissioner of water supply is authorized to place meters in certain classes of buildings and the charge made depends solely upon the quantity of water used. In this class of cases there is merely a voluntary purchase by the consumer from the city of such quantity of water as he chooses to buy (*Silkman* v. *Water Commissioners*, 152 N. Y. 327), and the obligation to pay therefor must primarily rest upon him who buys and consumes the article. As the sale by the city is necessarily on credit, as security for the payment of the debt a lien is imposed on the property itself for any unpaid charge.

It cannot be properly said that rents which are charged for water actually used are, in any just sense, taxes, so that persons against whom they are charged are entitled to notice and an opportunity to be heard before they are established. (*Silkman* v. *Water Commissioners*, 152 N. Y. 327; *Treadwell* v. *Van Schaick*, 30 Barb. 444; *Hill* v. *Thompson*, 18 J. & S. 165; *Reid* v. *Mayor*, 56 Hun, 156; *Vreeland* v. *O'Neil*, 36 N. J. Eq. 399; *Vreeland* v. *Jersey City*, 37 id. 574; *Provident Institution* v. *Jersey City*, 113 U. S. 506, 514.)

The authorities cited in effect hold that rents, which are charged for water actually used, are valid, although the rates are established without notice or opportunity to be heard by the person paying them. *This is upon the ground of an implied contract between the parties, it being said that as the rates are known to persons applying for a supply of water, when the application is made, it is in effect an assent by the applicant to those terms, and constitutes a contract between the parties.* (*Silkman* v. *Water Commissioners, supra.*)

Moreover in this case, in the application made by the plaintiff for water, it asked to be supplied with water under the rates and *subject* to the rules, regulations and ordinances of the city of New York and its departments. It was by virtue of these rules that the rate charged had been established, and hence the plaintiff's original application must be regarded as an *express consent* upon its part to pay the rates charged. I am of the opinion that under the circumstances herein, the water rents were not in the nature of taxes, but were rents established for water actually used and supplied to it under an express contract that the plaintiff would pay for it at the rates established by the defendant, and therefore the plaintiff is not entitled to recover any portion of the moneys paid for water charges although under protest. (*Silkman* v. *Water Commissioners, supra*, pp. 331, 332.)

Whether a measure relating to the public welfare is arbitrary or unreasonable, whether it has no substantial relation to the end proposed, is obviously not to be determined by assumptions or by *a priori* reasoning. The judgment should be based upon a consideration of relevant facts, actual or possible — *ex facto jus oritur*. That ancient rule must prevail in order that we may have a system of living law. (Frankfurter, "Mr. Justice Brandeis and the Constitution," 45 Harv. Law Rev. 33, 104, quoting from the dissenting opinion in *Adams* v. *Tanner*, 244 U. S. 590.) The decisions relied upon by the plaintiff were rendered many years ago and are not applicable to the case at bar.

The water supply provisions of the Greater New York Charter have been amended from time to time, as have the ordinances, and the commissioner of water supply has also promulgated new and amended rules and regulations to conform to the law expounded in those decisions since the turn of the century.

In *People ex rel. McAuliffe* v. *City of New York* ([1908] 129 App. Div. 551) it was held that when a meter became defective and failed to register that the city could not charge for water actually consumed by the plaintiff. That may have been the law in 1908, but it is not the law today. Consumers of water have to pay for such a commodity purchased either by meter registration or for

building construction purposes by the unmetered process of a flat rate charge as fixed by the New York Code of Ordinances (Chap. 25, art. 2, § 21, subds. 11, 12).

In *People ex rel. Lind* v. *City of New York* ([1909] 63 Misc. 511; affd., 134 App. Div. 951) the court upheld section 475 of the Greater New York Charter and canceled a water lien placed upon the premises because it was a cloud upon title for the period prior to May 19, 1908, the date when the amendment to section 475 of the charter went into effect (Laws of 1908, chap. 382), but took the average water consumption over the subsequent three months following the installation of the meter (as repaired) as the calculation of water consumed subsequent to the date when the amendment became effective. This average reading clause of section 475 of the charter was again amended by chapter 602 of the Laws of 1916 and by chapter 829 of the Laws of 1933, but it has no applicability to plaintiff's case, for the plaintiff corporation had actual *notice* of the ordinance and the water rates concerning extra and miscellaneous charges for unmetered water in existence in 1936 (not in 1906 or 1916 or 1933), for they appear on the reverse side of its paid meter bills and the meter permits for installation and the revocation permit. It is, therefore, bound by the ordinance charges (§ 21, subds. 11, 12) and not by section 475 of the Greater New York Charter.

The defendant is not estopped from claiming the extra and miscellaneous charges for unmetered water provided for in the ordinance (Chap. 25, art. 2, § 21, subds. 11, 12, of the Code of Ordinances of the City of New York).

Section 475 of the Greater New York Charter does not apply to the temporary use of water for building construction purposes, when apartment houses are in the course of construction, but applies solely to apartment houses used as residences with all modern conveniences as to heat, light, elevator service, common to all families occupying the building. (See *Kitching* v. *Brown*, 180 N. Y. 414, 422, 423; *Waitt Construction Co. Inc.* v. *Chase*, 197 App. Div. 327, 330; *Griswold Realty & Holding Corp.* v. *West End Avenue & 75th St. Corp.*, 125 Misc. 30.) A building is still in the course of construction when it is without heating and lighting fixtures and minus other minor essentials. (*People ex rel. 176 West 87th St. Corp.* v. *Cantor*, 230 N. Y. 312, 315, 316.)

The plaintiff had the burden of proof to overcome the presumption of the validity of the ordinance. The general welfare of the public is superior in importance to the pecuniary profits of the individual. (*Matter of Wulfsohn* v. *Burden*, 241 N. Y. 288, 294, 302.)

The board of aldermen amended the Code of Ordinances of the City of New York with relation to water rents and charges affecting

sections 20, 21 and 22 of article 21 of chapter 25 thereof by resolution adopted September 14, 1933, approved by the mayor September 20, 1933, and in full force and effect January 1, 1934.

The provisions thereof pertaining to the facts before this court are found in section 21, which provides: " Extra and miscellaneous rates where supply is not metered. 11. Building purposes. Stone work, terra cotta, concrete, fireproofing, brick work, and all other forms of masonry 7½ cents per cubic yard. 12. Plastering. 60 cents per 100 square yards, openings not included."

Pursuant to this section the commissioner of water supply rightfully exercised the powers conferred upon him when his inspectors found that the seal wires of the meter in plaintiff's corner building had been broken and the meter apparently tampered with. This constituted a violation of section 1432 of the Penal Law and Water Department Rule 105.

The existence of any of the conditions with reference to tampered meters described in section 1431 of the Penal Law is *presumptive evidence* that the person to whom the water is at the time being furnished by or through the meters has, with intent to defraud, created or caused to be created the conditions so existing with reference to such meters. (Penal Law, § 1431-a.) This section is applicable to civil actions (*Eff-Ess, Inc.*, v. *New York Edison Co.*, 237 App. Div. 315). The plaintiff failed to rebut this presumption by satisfactory evidence. The record is barren of any protest made by the plaintiff to any city officials in the department of water supply concerning the defective and tampered meter in the corner building.

A permit is not a right but a privilege, revocable at the discretion of the commissioner and may be withdrawn by the commissioner for any violation of the charter, the Code of Ordinances, or the established rules and regulations of the department of water supply. The installation of water meters upon building construction jobs is a matter resting solely in the discretion of the commissioner of water supply (§ 475). A privilege to have water meters register the consumption of city water used upon a building construction job is usually not revoked, unless where unusual and suspicious circumstances arise, as where the meter has been damaged or apparently tampered with while in the care and custody of the building contractor. (Water Department Rules 105, 123; Penal Law, § 1432.)

I am unable to agree with the plaintiff in its contention that it was entitled to have another meter immediately installed when the inspector ascertained that the original meter had been broken or tampered with. There are no so called " franchise rights " that are granted in the issuance of a revocable permit for water. As has

already been pointed out, it is merely a temporary privilege subject to revocation. (*People ex rel. Cooper's Glue Factory* v. *Tax Commissioners*, 143 App. Div. 174.)

The plaintiff corporation failed to notify the department of water supply at any time between the inspection of August 26, 1936, and September 15, 1936, that the seal wires were broken. The evidence before me shows that the only step the plaintiff ever took to notify the city authorities with respect to the broken meter was done at the instance of the city officials, who requested the removal of the meters because the rules and regulations of the department of water supply had been violated. The meter in question was shown to be protected by an unlocked board box of temporary construction in the basement floor of the corner building. No proof was offered that the same had been broken accidently nor was the meter itself damaged in any manner, other than the breaking of the seal, etc., so as to interfere with its proper registration.

It is evident that the meter was out of order since September 15, 1936. The buildings were not finally completed until about January 6, 1937, according to the records of the Queens building department. Even assuming the proof of the plaintiff's contention that it was not at fault in the breaking of the meter seal wires, nevertheless the plaintiff was guilty of negligence in not properly protecting the meter. The plaintiff must be held liable for the total quantity of water that was purchased by it as calculated by the commissioner of water supply under the rules and regulations to which the plaintiff expressly consented in its original application for a water meter permit for the construction of the buildings.

The exercise of discretion by any municipal officer to whom is confided the duty of determining whether the occasion exists for carrying out the legislative intention of the board of aldermen has nothing whatever to do with the creation of the law or ordinances adopted. There can be no valid objection to any municipal officer, such as the commissioner of water supply acting as a municipal agent, and in this instance, carrying out legislative intentions and designs. (*Union Bridge Co.* v. *United States*, 204 U. S. 364, 383.)

The city of New York has broad powers under its charter provisions. It may regulate and control the supply of water to its municipal districts and otherwise exercise general supervision in the sale and distribution of water. The operation thereof is for the benefit of the general public. (*City of New York* v. *Jamaica Water Supply Co.*, 226 N. Y. 572; *People ex rel. City of New York* v. *Queens Co. Water Co.*, 232 id. 277, 282; General City Law, art. 2-a, § 20, subds. 2, 7.)

The supply of city owned water to the inhabitants thereof is a " governmental function " of a public service character for which it is entitled to compensation fixed by law. (*Dunbar* v. *City of New York,* 251 U. S. 516.)

Judgment is hereby directed in favor of defendant, dismissing the complaint on the merits.