(40 Misc. Rep. 449.)

### FOSTER et al. v. MONROE et al.

(Supreme Court, Special Term, New York County.   April, 1903.)

1. NEW YORK CITY CHARTER—POWERS OF WATER COMMISSIONER—USE OF METERS.

   Laws 1897, p. 165, c. 378, § 475, giving the commissioner of water supply in New York discretion to cause water meters to be placed in all places in which water is furnished "for business consumption," does not give him authority to install meters in premises other than such as are wholly or partly subjected to some regular calling, and he requires authority from the board of aldermen to install a meter in an apartment house.

2. SAME—CUTTING OFF SUPPLY—INJUNCTION.

   Where the commissioner of water supply unlawfully installed a water meter in 1895 in an apartment house, and the owners of the building disputed by an action the correctness of the amount of the water shown to have been used, the court will restrain, pending the action, the commissioner from cutting off the water supply.

3. SAME—WATER FOR BUSINESS CONSUMPTION.

   Where the owner of an apartment house furnished to the former owner, living in a private dwelling next door, water for heating and lighting purposes pending an establishment by him of a separate plant, it did not make the apartment house a place in which water was furnished for "business consumption," within the meaning of the Consolidation Act, Laws 1882, p. 1, c. 410, and Greater New York Charter, Laws 1897, p. 1, c. 378.

Action by Tallmadge W. Foster and Preston Stevenson against Robert Grier Monroe and others.   Motion for an injunction.   Granted.

Preston Stevenson, for plaintiffs.

George L. Rives, Corp. Counsel (Chase Mellen and Francis J. Byrne, of counsel), for defendants.

BISCHOFF, J.   Pending this action to ascertain the proper amount due, plaintiffs ask to have the defendants enjoined from cutting

off the water supply to their premises, an apartment house, for non-payment of charges for the period beginning October 23, 1900, the plaintiffs insisting that such charges are excessive, as measured by a meter installed without authority. The meter was installed in 1895, when the New York City Consolidation Act (Laws 1882, p. 1, c. 410) provided as follows:

"Sec. 352. The commissioner of public works is authorized, in his discretion, to cause water meters, the pattern and price of which shall be approved by the mayor, comptroller and chief engineer of the Croton aqueduct, to be placed in all stores, workshops, hotels, manufactories, public edifices, at wharves, ferry-houses, stables and in all places in which water is furnished for business consumption by the department of public works, except private dwellings, so that all water so furnished therein or thereat may be measured and known by the said department, and for the purpose of ascertaining the ratable portion which consumers of water should pay for the water therein or thereat received and used."

And authority for its maintenance, since the Greater New York Charter (Laws 1897, p. 1, c. 378) took effect, January 1, 1898 (section 1611), is sought in the following provision of such later law:

"Sec. 475. The commissioner of water supply is authorized, in his discretion, to cause water meters, the pattern and price of which shall be approved by the board of aldermen, to be placed in all stores, workshops, hotels, manufactories, office buildings, public edifices, at wharves, ferry-houses, stables, and in all places in which water is furnished for business consumption, and, if authorized thereto by resolution or ordinance of the board of aldermen, in all apartment-houses, tenements, flat houses, and private dwellings, so that all water so furnished therein or thereat may be measured and known by the said department, and for the purpose of ascertaining the ratable portion which consumers of water should pay for the water therein or thereat received and used."

It is not contended, and it does not appear, that the authority of the commissioner of water supply has been extended as provided for in the later law, and hence whether or not the plaintiffs are entitled to the relief demanded must depend upon the commissioner's authority as directly given.

As stated, all the unpaid charges for which the withdrawal of water supply is threatened have accrued since October 23, 1900, subsequent to the time when the Greater New York Charter provisions went into effect, and it is immaterial, therefore, to inquire whether an apartment house is a "private dwelling" within the meaning of the law in force when the meter was installed, the later law having expressly exempted "apartment houses" from the commissioner's discretionary authority, and the question before the court having to do only with the maintenance of the meter during the period of such unpaid charges. It appears that during such period, and up to January 1, 1903, the plaintiffs, under an agreement with the former owner of the apartment house, supplied his adjoining private dwelling with water for heating asd lighting purposes pending the installation of a separate plant, and this, it is contended, involved a furnishing by the department of water to the apartment house for "business consumption," within the meaning of both the Consolidation Act and of the Greater New York Charter, and so subjected the plaintiffs' premises to the discretionary authority of the commissioner in the matter of the installation and maintenance of meters. Differentiating "business" from "trade" merely, and accord-

ing to the former its more comprehensive significance, I am, notwithstanding, unpersuaded that it was the intention of the Legislature to confer upon the commissioner of water supply authority to install and maintain meters, in his discretion, in premises other than such as are wholly or partly subjected to use in some regular calling ·or vocation. If it be deemed of advantage to meter premises conditioned as the plaintiffs' were at the time when the disputed charges were incurred, the needful authority, by resolution of the board of aldermen, is provided for, and should be resorted to in every case in which such authority has not been directly conferred within the letter and spirit of the law as enacted. Upon no theory of strained or unreasonable interpretation should the commissioner of water supply be permitted to assume authority, the conferring of which is plainly reposed in an important body of the municipal government.

What was meant by the term "business" is, I think, obvious from the language of the provisions of the Consolidation Act and charter which immediately precedes it, and the case is one to which the rule noscitur a sociis (21 Am. & Eng. Encyc. of Law [2d Ed.] 550) is singularly apposite. "The commissioner," etc., "is authorized," etc., "to cause water meters," etc., to be placed in all stores, workshops, hotels, manufactories, office buildings, public edifices, at wharves, ferry-houses, stables and in all places in which water is furnished for business consumption." It is to be noted that in each instance of the specified use of the premises in which water is furnished by the department some regular calling or vocation is mentioned, and the only reasonable inference therefrom is that by "all places in which water is furnished for business consumption" a like use of the premises was in contemplation. It is certainly an unreasonable view that the Legislature had in mind at the time isolated instances of water supplied, even for some return, to an adjoining house, in a spirit of neighborly accommodation. Popularly, and therefore apparently, a supply of water under such conditions is not to be regarded as "business." Hill v. Thompson, 18 J. & S. 165, relied upon for the defendants, is not to the contrary, since the ratio decidendi of that case did not involve the meaning of the language here interpreted.

Motion granted, with $10 costs.