(41 Misc. Rep. 198.)

PEOPLE ex rel. HAMMERSTEIN v. MONROE, Water Supply Com'r.

(Supreme Court, Special Term, New York County. July, 1903.)

1. MUNICIPAL CORPORATION—GREATER NEW YORK CHARTER—WATER DEPARTMENT—RULES.

Greater New York Charter (Laws 1901, p. 213, c. 466) § 478, provides: that the rules and regulations for the use of Croton water printed on each permit shall be notice to water takers, and shall authorize an action to recover penalties which may be imposed, in addition to cutting off the· use of the water, for the violation of rules, but does not allow the city water commissioner to make rules arbitrarily requiring a consumer whose· supply has been cut off for nonpayment of water rates to pay any sum which might be fixed by the commissioner as the cost of cutting off such supply.

.2. SAME—PENALTY—RECOVERY.

A charge imposed by a Croton water commissioner for cutting off a water consumer's supply for failure to pay water rates, as authorized by rules established by the water department of New York City, is a penalty, and can be recovered only when determined by due process of law.

·3. SAME—DEPOSIT.

Where a water consumer's supply was cut off for nonpayment of water rates, mandamus will not be granted to compel the water commissioner to continue the consumer's supply without payment of penalty demanded as the cost of cutting off the supply, except on the consumer's making a deposit covering the amount charged, as security to the commissioner, and also covering the probable cost of litigation to determine the validity of the charge.

Application by the people, on relation of Oscar Hammerstein, for a peremptory writ of mandamus against Robert Grier Monroe, as commissioner of water supply, gas, and electricity, to compel defendant to permit relator to use Croton water on certain premises described. Application granted.

Cantor, Adams & McIntyre (John F. McIntyre, of counsel), for relator.

George L. Rives, Corp. Counsel (Chase Mellen and A. W. Boor-aem, of counsel), for respondent.

GIEGERICH, J. This application is made for a peremptory writ of mandamus to compel the respondent to accept certain sums heretofore tendered by the relator, and thereupon to permit the latter to continue to use Croton water, which has been turned off from the premises in question. The relator is constructing a theater upon his premises, Nos. 302 to 308 West Thirty-Fourth street, and requires the use of Croton water for building purposes. After due notice to the relator to pay the charges for such use, which was not complied with, the respondent proceeded to cut off the water supply. While this work was in progress the relator tendered the amount demanded for such use, together with $5, which had been imposed as a fine for his failure to duly obtain a permit; but the respondent refused to restore the connections and permit the resumption of the use of the water unless a further sum should be paid to cover the cost of cutting the connections, so far as that work had progressed up to the time of the tender. The relator refused to make such payment, and the work of cutting off the water was carried on to its completion, and a charge of .$54 made for labor, and an additional charge of $90, the estimated expense of restoring the asphalt pavement which had been torn up in the course of the work. In support of the application it is urged that, after the relator had tendered the amount of the water rates and the fine, he was entitled to have the use of the water restored to him, leaving open the question of the amount of his liability for the expense incurred in cutting the connections, to be determined in a future proceeding at law. On behalf of the city it is contended that the right of the commissioner to cut off the water supply for a violation of the department's rules is absolute, and reliance is placed upon the following provisions of the Greater New York charter:

"Sec. 469. The commissioner of water supply, gas and electricity shall have cognizance and control: (1) Of all structures and property connected with the

supply and distribution of water for public use; * * * (4) of the enforcing of the ·regulations concerning the use of water, and of recommending to the board of aldermen proposed ordinances relating to any of the matters within the province of his department. * * *."

"Sec. 478. The rules and restrictions for the use of the water printed on each permit shall be notice to water takers, and shall authorize the exaction and recovery by process of law of any penalties which may be imposed in addition to the cutting off the use of the water for any violation of the rules, and this section shall be printed on such permits." Laws 1901, pp. 207, 213, c. 466.

The respondent further claims that the relator was making an unlawful use of the water, by making a connection with and taking water for building purposes from a service pipe installed in 1882 for the purpose of supplying a factory with a metered supply, which factory has since been torn down, and calls attention to the following rules on the back of the permits issued for building purposes, as being applicable:

"(2) No addition or alterations whatever, in or about any conduit, service pipe or water-cock or meter shall be made, or caused to be made, by persons taking the water, without notice thereof being previously given to and permission had in writing from the commissioner of water supply, gas and electricity. * * * (5) In cases of fraudulent misrepresentation on the part of the applicant or of uses of the water not embraced in the within permit, or of unlawful or unreasonable waste of water, the department of water supply shall have the right to forfeit his payment, and the supply of water shall be stopped, unless the party shall promptly pay such additional charge as this department may impose."

Attention is also called to the following rules, which are printed on the back of all bills for water rates:

"(22) In case of violation of any of the preceding requirements or regulations, or if free access to the meters, for examination or repair, shall at any time be denied to the engineer, or such person or persons as the commissioner of water supply, gas and electricity may employ for that purpose, or if upon examination it shall be found that the meter has been tampered with, the water supply shall be stopped, unless the party shall promptly pay such additional charge as the commissioner of water supply, gas and electricity may impose, nor will the supply be resumed except upon payment of the expense of shutting off and turning on, and upon satisfactory understanding that no future cause for complaint shall arise. * * * (26) Application to the bureau of water register must be made for any additional plumbing fixtures for which the department charges extra rent in all buildings where the supply of water is not fully metered. * * * (30) The penalty for the violation of any of the preceding rules and regulations shall be the shutting off the water or placing of a meter in addition to any of the penalties prescribed by law."

The argument on behalf of the city is that the relation between the city and the consumer of water is a contractual one, whereby the latter, by applying for the service or using the water, contracts with the city to pay for the same, and accepts the service subject to the regular rules of the department; citing Silkman v. Water Commissioners, 152 N. Y. 327, 46 N. E. 612, 37 L. R. A. 827, and Hennessey v. Volkening, 30 Abb. N. C. 100, 22 N. Y. Supp. 528. On the other hand, in support of the application, it is insisted that the charge in dispute is not an item covered by the contract, but is a penalty; and section 478 of the charter, above quoted, is relied upon in support of this argument. I am of the opinion that this contention is sound, and that the city authorities have no power, under that provision of the charter, to

make any rules or regulations which would have the effect of importing into the contract an obligation on the part of any one who uses water to pay whatever amount might be claimed as the cost of cutting off the water supply for any violation of the rules. There may often be, as there is in this case, a dispute as to what is the proper cost of the work entailed; and it seems clear that the purpose of the Legislature was that any such charge should be determined "by process of law," and not arbitrarily by the city authorities. It is suggested on behalf of the city that, if this application be granted, the position of the relator, who wrongfully attempted to use water without obtaining a permit, would be better than that of one who had applied for such permit under section 391 (page 168) of the charter, which authorizes the borough president to demand, "before issuing said permit, and as a condition thereof, the deposit of such sum of money or other security as, in his judgment, may be necessary to pay the cost of properly relaying the pavement so removed, together with the expense of the inspection thereof." In conformity with the spirit of this requirement, a condition should be attached to the issuance of the writ that the relator deposit the sum demanded, as security for the payment of any amount which may be ultimately recovered by the city; and, since it is evident there will be litigation, a further sum, to be determined and specified upon the settlement of the order, should also be deposited as security for the payment of any costs that may be awarded to the city in such litigation. Application granted upon the terms indicated, but without costs.

Application granted, without costs.