The court below seems to have allowed the plaintiffs to recover their expenses for counsel fees in the trial of the action in which the order of arrest was granted, as well as counsel fees in an appeal taken from the judgment in that action by the defendant Jacobs. This was in excess of the obligation of the undertaking, which was limited only to the costs of the action and such extra costs and damages as arose from the arrest itself, and cannot be extended to the counsel fee paid for defending the cause of action set up in the complaint. Sutorius v. North, 20 Civ. Proc. R. 162, 13 N. Y. Supp. 557; Sperry v. Hellman, 20 Civ. Proc. R. 218, 13 N. Y. Supp. 899.

The judgment of the Municipal Court is therefore reversed, and a new trial ordered; costs to abide the event. All concur.

In re HERRMAN.

(Supreme Court, Appellate Division, First Department.   June 3, 1910.)

1. WATERS AND WATER COURSES (§ 203*)—PUBLIC WATER SUPPLY—WATER RATES—ORDINANCES.

A water ordinance providing a fixed scale of minimum charges for water supplied to dwelling houses, based on frontage width up to 50 feet and height up to and including five stories, the rates being increased $1 for each additional story, etc., and being apportioned on the basis of one family to a house and one closet and bath to each house without extra charge, an additional charge being made for each additional family, and providing that all charges mentioned or fixed are reserved for special contract, did not on its face apply to an apartment house seven stories high, with a frontage of 45 feet.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

2. MANDAMUS (§ 143*)—RIGHT TO WRIT—LACHES.

An apartment building was completed January 1, 1901, and was acquired by relator in April, 1903. In June, 1902, the department of water supply, etc., notified the then owners to install a water meter, and on their failure to do so the commissioner caused one to be supplied. The expense of installing the meter was paid without protest in March, 1903, and no objection against its maintenance was made until May 22, 1908, when notice was given by relator's attorney, during all of which time plaintiff and his predecessors had paid water rates on meter readings. Held that, whether relator was legally bound to pay meter rates for the building or not, he could not under such facts maintain an application for mandamus to compel the water commissioners to furnish water to his building at frontage rates.

[Ed. Note.—For other cases, see Mandamus, Cent. Dig. §§ 282–285; Dec. Dig. § 143.*]

Appeal from Special Term, New York County.

In the matter of the application of Uriah Herrman for a peremptory writ of mandamus, directed to John H. O'Brien, as Commissioner of Water Supply, Gas, and Electricity of the City of New York, to compel respondent to furnish water to relator's building at frontage rates. From an order denying the application in part, relator appeals. Modified and affirmed.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Argued before INGRAHAM, P. J., and McLAUGHLIN, SCOTT, CLARKE, and DOWLING, JJ.

John J. A. Rogers, for appellant.
Terence Farley, for respondent.

McLAUGHLIN, J. The relator is the owner of an apartment house seven stories in height and having a frontage of 45 feet. He appeals from an order denying his application for a peremptory writ of mandamus to compel the commissioner of water supply, gas, and electricity of the city of New York to furnish water to the building at frontage rates, to adjust arrears of water rents at the same rate, to cancel and discharge existing liens for water heretofore furnished, and to remove a water meter placed in the building.

Both of the parties seem to agree that the rates charged for water furnished to the premises are governed and to be determined by an ordinance of the former municipal assembly, adopted by the board of aldermen pursuant to section 473 of the Greater New York charter (Laws 1901, c. 466). This ordinance provides a fixed scale of minimum annual charges for water supplied to dwelling houses, based on a frontage width up to 50 feet and height up to and including five stories. The charges vary from $4 per annum for a one-story house with a frontage of 16 feet or less to $14 for a one-story house having a frontage of from 37½ to 50 feet; the rates being increased $1 for each additional story. The charges are apportioned expressly upon the basis of one family to a house, and one closet and one bath in each house are without extra charge. For each additional family, bath, and closet, additional charges are fixed. The ordinance further regulates the charges for water supplied for other than domestic use, and provides for the installation of water meters in stores, hotels, etc., "the charge for water measured by meter to be ten cents per 100 cubic feet," and that "all charges not herein mentioned or fixed are reserved for special contract by and with the commissioner of water supply, gas, and electricity."

The relator claims that for the water supplied to his apartment house he can be legally charged only at the frontage rates specified in the ordinance. In his petition for the writ he alleges that the lawful charge for water furnished would amount to $106 a year, but that heretofore the commissioner of water supply unlawfully and "against the protest of this relator and his grantor" installed a water meter upon the premises; that since the 1st of January, 1908, bills have been rendered to him at meter rates, and he has accordingly been compelled to pay, against his protest, $1,265.08; that such unlawful charges for water used from March to October, 1908, are unpaid, and an apparent lien upon the premises; that the meter thus illegally installed can be removed only upon a permit from the commissioner; and by reason of such facts he alleges he is entitled to the writ applied for.

From the affidavits presented in opposition to the issuance of the writ, it appears that the apartment house in question was completed about January 1, 1901, and that the relator did not become the record owner of the same until April, 1903; that in June, 1902, the depart-

ment of water supply, gas, and electricity notified the then owners of the premises to install a meter to measure the water supplied, and upon their failure to do so the commissioner caused one to be installed the following September; that from the records of the department it appears that the expense of installing the meter was paid without protest by the owners in March, 1903, and that no objection or protest of any kind against the installation or maintenance of the meter was thereafter made to the department of water supply until May 22, 1908, when a notice was received from the relator's attorney; that since the installation of the meter all charges for water supplied have, without objection, been fixed and determined at meter rates; and that such charges to October 22, 1907, have been paid without protest, but since that time the charges have remained unpaid.

It thus appears that many of the facts set forth in the petition for the writ were controverted, and therefore whether the relator was entitled to the writ had to be determined upon the assumption that the affidavits, in so far as they were in conflict with the allegations of the petition, were true. People ex rel. Corrigan v. Mayor, 149 N. Y. 215, 43 N. E. 554. Such assumption must not only be indulged in, but it must also appear, before a peremptory writ will issue, that the relator has a clear legal right to the relief asked. People ex rel. Pumpyansky v. Keating, 168 N. Y. 390, 61 N. E. 637. When the petition and the opposing affidavits are both considered, it is perfectly clear that it cannot be said from them that the relator is entitled to all or any of the relief which he wants. The ordinance in question cannot be said, certainly upon its face, to apply to an apartment house over five stories in height, and, if it does not, then the rates to be charged for water furnished are to be fixed by "special contract."

I have grave doubts whether the ordinance applies at all to the modern apartment house. From its wording it would seem to apply only "to dwelling houses," or such buildings as were so considered at the time the ordinance was passed, because it will be noticed that the frontage rates were apportioned "on the basis that but one family is to occupy the same." Then follows the provision that for each additional family $1 is to be charged. But, whether it does or not, what is set out in the opposing affidavits amounts, in effect, to the statement that the rate to be charged was fixed by special agreement. This clearly can be inferred. The meter was installed without objection, and paid for by the then owners of the building, September 24, 1902, and the rates for water furnished from that time to October 22, 1907, a period of over five years, were paid by the owners without protest of any kind. Indeed, the relator himself, from the time when he acquired title, April 3, 1903, down to the 22d of October, 1907, paid for the water furnished according to the meter readings without objection. Under such circumstances, it seems to me the relator will have some difficulty in establishing that the meter was not legally installed. and that he is not obligated to pay the charge for water measured by the meter at the rate specified. But, if he is not, he certainly cannot test that question in the manner here sought. If, as he claims, the charges are illegal, then he can resist payment of the same when the city seeks to collect them.

I am of the opinion that the court, in the exercise of its·discretion, should have dismissed the petition in toto. This, however, it did not do, but granted the application to the extent of requiring the department of water supply, gas, and electricity to issue a permit for the removal of the meter, and then, if it saw fit to do so, to cut off the supply of water if the same were removed.

.The city has not appealed from this part of the order, and for that reason the order appealed from is affirmed, with $10 costs and disbursements. All concur.