JOHNSON–KAHN CO. v. THOMPSON et al.

(Supreme Court, Special Term, New York County. June 18, 1911.)

1. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—RATES— "BUSINESS CONSUMPTION."

Water used in operating a café, billiard room, bar, barber shop, and garage in connection with apartment houses, is used for "business consumption," within New York City waterworks regulations, permitting a commissioner to require installation of meters.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

2. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—RATES.

An owner of an apartment house, operating a café, etc., for the use of his tenants, in which meters are ordered by the water commissioner, cannot claim the right to frontage water rates as to consumption outside the café, etc., where the plant is not arranged for the separate service.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

3. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—RATES.

The New York City ordinance fixing frontage water rates being limited to buildings at least five stories high, an owner of an apartment building exceeding that height is not entitled to such rate.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

4. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—RATES.

A municipal water meter rate, as against a flat rate, is not per se unreasonable.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

5. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—RIGHT TO SERVICE.

Inhabitants' right to water service supplied by the city is limited to the right to receive water at reasonable rates without discrimination.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

6. EQUITY (§ 66*)—MAXIMS.

Equity will not aid in bringing about inequitable results, and he who seeks equity must do equity.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 188–190; Dec. Dig. § 66.*]

7. WATERS AND WATER COURSES (§ 201*)—RIGHT TO RELIEF—EXISTENCE OF OTHER REMEDY.

Under the rule that equitable relief does not lie when there is an adequate remedy by mandamus or otherwise, suit does not lie to enjoin discontinuance of water service to a particular consumer on a flat rate, under order by a municipal commissioner for installation of a meter;

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the consumer having a remedy by mandamus to compel supply of water, or by defense to an action for rents, if a meter is installed.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 201.*]

8. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—COMMISSIONER OF WATER SUPPLY—POWERS.

Greater New York Charter (Laws 1901, c. 466) §§ 469, 478, giving the commissioner of water supply control of the collection of water rates, enforcement of regulations concerning the use of water, etc., empower him to make reasonable regulations to secure the collection of revenues and proper use of the mains and appliances for distributing water and to prevent undue waste thereof.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

9. WATERS AND WATER COURSES (§ 203*)—MUNICIPAL WATERWORKS—REGULATIONS OF SERVICE—REASONABLENESS.

Regulations for municipal water service to individuals, prohibiting use of hose, rams, syphons, etc., except when the premises are metered, requiring consumers to keep pipes in repair and to prevent waste, etc., are reasonable.

[Ed. Note.—For other cases, see Waters and Water Courses, Dec. Dig. § 203.*]

10. INJUNCTION (§ 74*)—SUBJECTS OF RELIEF—DISCRETION.

Injunction does not lie to control exercise of a lawful official discretion, in the absence of abuse.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 142, 150; Dec. Dig. § 74.*]

Action by the Johnson-Kahn Company against Henry S. Thompson, Commissioner of Water Supply, Gas, and Electricity of New York City, and another. Judgment for defendants.

See, also, 68 Misc. Rep. 639, 125 N. Y. Supp. 443.

Myers & Goldsmith (E. J. Myers, of counsel), for plaintiff.

Archibald Watson, Corp. Counsel (W. H. King and George H. Folwell, of counsel), for defendants.

PENDLETON, J. This is an action in equity to enjoin the commissioner of water supply, gas and electricity of the city of New York and the water registrar of that department from cutting off, interfering with, or preventing plaintiff from receiving and enjoying water as it is now being had, used, and enjoyed. Plaintiff is the owner of two large modern apartment houses at Seventy-Second street and Riverside Drive, in the city of New York, called the "Chatsworth" and "Chatsworth Annex." The former is some 13 stories in height, with a frontage of about 100 feet on Seventy-Second street and some 88 feet on Seventy-First street. The latter adjoins the former, and is 8 stories high and has a frontage of 70 feet on Seventy-Second street by a depth of 100 feet. The two apartments are operated together. They contain 78 housekeeping apartments, all used exclusively for residential purposes. There is in addition a steward's apartment on the premises and a café and bar, with billiard room and a barber shop, intended primarily for the use of the tenants, but to which the public is admitted; this privilege, however, being apparently little availed of. A complete modern plant of steam boilers and engine, electric dynamos,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

and appliances is installed on the premises for furnishing steam heat, electric light, and elevator service, laundry driers, and a refrigerating plant for the benefit of the tenants and use in the building, for part of which, such as electric light, a special charge is made. There is also on the premises a garage from which are operated electric omnibuses; the electric batteries being charged from the electric plant, and the water for washing omnibuses and other purposes coming through the regular pipes connected with the city's mains. These omnibuses are for the use of the tenants, who pay a fare for such use. The premises are connected with the city's water mains, and the water is drawn therefrom for general use in the apartments, the café, bar, billiard room, barber shop, and garage. City water is also used in the boilers for generating the steam required for the steam and electric installation, operating pumps, elevators, etc. The water for the refrigerating plant is largely taken by means of electric pumps from the salt waters of the Hudson river; but it is conceded that some part of the water is from the city's mains, although how much is a matter of dispute. The refrigerating plant, by means of certain mechanical devices and chemical processes, furnishes refrigerators to the various apartments, as well as to the café and bar, and perhaps the barber shop.

It appears that plaintiff in 1904 applied for and meters were installed on these premises, and for several years water was taken and paid for at meter rates, but in 1909 the meter was removed; permission therefor being signed by the then water registrar. Thereafter the defendant, the commissioner of water supply, gas, and electricity, on January 22, 1910, notified plaintiffs that a continuing waste of water had been found to exist on the premises and that a meter must be installed within 10 days, and demanded payment for the amount due and unpaid for water wasted, and on March 2d further notified plaintiffs that a special agreement be entered into or the water would be cut off. Some other negotiations were had, and plaintiff, fearing that, unless a meter was put in and payment made at meter rates, the water would be cut off, commenced this action to enjoin the defendants from interfering with or preventing plaintiff from receiving water "as now used and enjoyed." On motion an injunction pendente lite was granted (68 Misc. Rep. 639, 125 N. Y. Supp. 443) on the condition that the plaintiff consent to a meter being installed to measure the water used pending the final determination of the action, and such meter is now in use on the premises.

The provisions of the charter and ordinances of the city bearing upon the question involved are as follows:

### Greater New York Charter (Laws 1901, c. 466).

"Sec. 469. The commissioner of water supply, gas and electricity shall have cognizance and control: (1) Of all structures and property connected with the supply and distribution of water for public use, except the same shall be owned by private corporations, including all fire and drinking hydrants and all water meters. * * * (3) Of the collection of the revenues from the sale or use of water from the public supply. (4) Of the enforcing of the regulations concerning the use of water, and recommending to the board of aldermen proposed ordinances relating to any of the matters within the province of his department."

"Sec. 473. The board of aldermen shall hereafter have all power, on recommendation of the commissioner of water supply, gas and electricity, to establish and fix a uniform scale of rents and charges for supplying water by the city of New York, which shall be apportioned to different classes of buildings in said city in reference to their dimensions, value, exposures to fire, ordinary use for dwellings, stores, shops, private stables and other common purposes, number of families or occupants, or consumption of water, as near as may be practicable; and modify, alter and amend such scale from time to time, and to extend it to other descriptions of buildings and establishments."

"Sec. 475. The commissioner of water supply, gas and electricity is authorized, in his discretion, to cause water meters, the pattern and price of which shall be approved by the board of aldermen, to be placed in all stores, workshops, hotels, manufactories or wharves, ferryhouses, stables, and in all places in which water is used for business consumption, and, if authorized thereto by resolution or ordinance of the board of aldermen, in all apartment houses, flathouses and private dwellings, so that all water furnished therein or thereat may be measured and known by the said department for the purpose of ascertaining the ratable portion which consumers of water should pay for the water therein or thereat received and used."

"Sec. 478. The rules and restrictions for the use of water printed on such permit shall be notice to the water takers, and shall authorize the exaction and recovery by process of law of any penalties which may be imposed, in addition to cutting off the use of the water, for any violation of the rules, and this section shall be printed on such permits."

### City Ordinances.

"Sec. 282. The minimum annual rents and the special charges to be collected by the department of water supply, gas and electricity shall be as follows, to wit:

| Front Width. | One Story. | Two Stories. | Three Stories. | Four Stories. | Five Stories. |
|---|---|---|---|---|---|
| 16 feet and under...... | $ 4.00 | $ 5.00 | $ 6.00 | $ 7.00 | $ 8.00 |
| 16 to 18 feet........... | 5.00 | 6.00 | 7.00 | 8.00 | 9.00 |
| 18 to 20 feet........... | 6.00 | 7.00 | 8.00 | 9.00 | 10.00 |
| 20 to 22½ feet......... | 7.00 | 8.00 | 9.00 | 10.00 | 11.00 |
| 22½ to 25 feet......... | 8.00 | 9.00 | 10.00 | 11.00 | 12.00 |
| 25 to 30 feet........... | 10.00 | 11.00 | 12.00 | 13.00 | 14.00 |
| 30 to 37½ feet......... | 12.00 | 13.00 | 14.00 | 15.00 | 16.00 |
| 37½ to 50 feet......... | 14.00 | 15.00 | 16.00 | 17.00 | 18.00 |

"The apportionment of the regular frontage rates upon dwelling houses is on the basis that but one family is to occupy the same, and for each additional family one dollar per year shall be charged. * * *

"Baths—All baths, three dollars per annum. Water-closets and urinals of every description, two dollars per annum. One water-closet and one bath in each house supplied free of charge. * * *

"Meter Rates.—Water meters shall be placed at the discretion of the commissioner of water supply, gas and electricity for all stores, workshops, hotels, manufactories, office buildings, public edifices, on wharves, ferryhouses and in all places where water is furnished for business consumption, except private dwellings; the charge for water measured by meter to be ten cents per hundred cubic feet. All charges not herein mentioned or fixed are reserved for special contract by and with the commissioner of water supply, gas and electricity."

Rules and regulations have been adopted by the commissioner of water supply, gas, and electricity, including among others the following:

"(3) All persons taking water shall keep their service stop-cocks, ballcocks, fixtures, meters and apparatus in good repair, and protect from frost at their own expense, and shall prevent all waste of water."

"For violation of this rule a penalty of $2 is fixed, in addition to those specified in rule 48."

"(7) The use of hose inside of buildings for any purpose whatever is allowed only where the premises are fully metered."

"(8) The use of hose outside of buildings is not permitted except where the premises are fully metered and a special permit obtained from this department. * * *"

"(10) No hydraulic ram, engine, syphon or other appliance, except as provided in rule 11, requiring for its operation the pressure from the street main or the consumption of water will be allowed to be used except where the supply is metered."

"(40) In case of violation of any of the preceding rules, requirements and regulations, or any of the laws or ordinances relating to water supply, or if it shall be found that a meter has been tampered with, the water supply will be shut off and any advance payments forfeited, unless such additional charges as the commissioner may impose are paid promptly. Nor will the supply be re-established except upon payment of the expenses of shutting off and turning on, and upon satisfactory assurance that no further cause of complaint will be given.

"The penalty for the violation of any of the preceding rules and regulations shall be the shutting off of water or placing of a meter, in addition to any of the penalties prescribed by law."

[1] It is claimed that the furnishing to the tenants of the facilities above mentioned and the operation of the café, restaurant, bar, billiard room, barber shop, and garage, with its electric omnibuses, is substantially a business, and brings the case within the provisions where water is used for "business consumption." The plaintiff denies this, and claims that the lineal or frontage rates apply to these premises. It is obvious that by the above provisions a clear and specific distinction was intended to be drawn between what we may call domestic or residential purposes and business purposes; a natural distinction, both from the point of view of the relative amount of water used and the considerations of public policy, entering into the question as to the proper regulations and restrictions to be applied. The conveniences furnished to the tenants, such as light, heat, elevator service, hot and cold water, laundry driers, and refrigerators, all belong, I think, to the class of domestic or residential purposes, and are services or conveniences kindred to those connected with dwelling and dwelling purposes; and while, perhaps, somewhat more extended than in the apartment house of the old type, are not different in kind and are not within the meaning of "business consumption," as those words are used in the section of the charter above quoted. Foster v. Monroe, 40 Misc. Rep. 449–452, 82 N. Y. Supp. 653. A café, bar, billiard room, barber shop, and garage stand on a different footing and are per se business purposes, and the water furnished therefor is for "business consumption." Certainly garage is in the same category as stables and restaurants or hotels. It may be conceded that here the primary object and intention is the convenience of the tenants, but that does not change their nature. Even if their use were confined to the tenants absolutely, they would still be essentially business purposes. A special charge is made, and they differ in no respect, except as to the number using them, from similar places open to the public.

[2] It is urged by the plaintiff that, conceding this, the water meter should only be installed as to these special parts of the premises. It

may be admitted that, where part of the premises come within the provisions as to meter rate and part within the provisions providing for frontage rates, the water used in the former may, if such arrangement is feasible, be metered and the latter paid for on frontage rates. It is, however, doubtful whether such arrangement would be practicable here. Possibly it might be, so far as water for ordinary purposes of the café, bar, billiard room, and garage is concerned; but the steam heat, electric light, refrigerator, and such purposes depend on water used in the boilers, and it is difficult to see how water for such uses, as applied to *these parts* of the premises, could be separately metered. However this may be, it is sufficient for present purposes to say that the plant is not so arranged. When, if it ever is, a different question may be presented.

[3] Apart, however, from the café, bar, billiard room, and garage, the premises do not come within the terms of the ordinance providing frontage rates. Herrmann v. O'Brien, 138 App. Div. 780, 123 N. Y. Supp. 752; Foster v. Monroe, 40 Misc. Rep. 449–452, 82 N. Y. Supp. 653. The provisions of the ordinance are limited by their terms to buildings five stories in height and 50 feet in width, and there would seem to be no good reason to extend them by implication. In the old ordinance preceding the enactment of the Greater New York charter the words "or over" appear after the number of stories, viz., "five stories or over," and after the 50 feet in width provision came a clause that in cases of excess of "fifty feet in width" the matter should be left to special agreement with the "aqueduct board," the predecessor of the commissioner of water supply, gas, and electricity. In revising the ordinance, the words "or over" after the number of stories were omitted, and in place of the provision that in case of excess of "fifty feet in width" it should be the subject of special agreement it was made to read, "in all other cases" the matter should be the subject of special agreement. This shows very clearly that it was not intended that frontage rates should apply to higher or larger constructions, but that these latter should be dealt with by special agreement by the commissioner of water supply, gas, and electricity.

It is urged, however, and was held in this case on the motion for a preliminary injunction, that these provisions as to special agreement were void, as an unlawful delegation of the discretionary powers of the board of aldermen. There have been intimations the other way. Herrmann v. O'Brien, 138 App. Div. 780, 123 N. Y. Supp. 752, and other cases. If this contention is, however, sound, it only results that as to the premises in question and similar ones no rate or method of charge has been fixed, and it is an instance of "casus omissus." It does not follow that an injunction should issue. This is not a case where the plaintiff shows a fixed charge or rate at which he is entitled to be furnished water which the commissioner of water supply, gas, and electricity seeks to disregard.

[4] A meter rate is not per se unreasonable (Herrmann v. O'Brien, 138 App. Div. 780, 123 N. Y. Supp. 752), and the evidence does not, therefore, disclose that any unreasonable burden is sought to be put on the plaintiffs or any discrimination against it. If plaintiff prevails

in this proceeding, and an injunction is issued, it will result in its obtaining the city's water for nothing, or for such sum as it may be willing to pay, which would be manifestly inequitable and improper.

[5] The city of New York has been, under powers vested in it for many years by statutory enactment, engaged in supplying water to the inhabitants of the city on payment of a charge therefor, and persons are not entitled to water without payment. Treadwell v. Van Schaick, 30 Barb. 444. In the absence of a fixed rate, their rights do not go beyond to receive water at reasonable rates without discrimination. Silkman v. Water Com'rs, 152 N. Y. 327, 46 N. E. 612, 37 L. R. A. 827; Chicago & R A. v. City of Carlinville, 103 Ill. App. 251; Kirkham v. Russell, 76 Va. 956. The metering of water is not per se unreasonable, as above pointed out, and the charge claimed by the defendant is the usual rate for metered water. There is no suggestion in the evidence of arbitrary discrimination against plaintiff.

[6] A court of equity will not lend its aid to bring about inequitable results. It is a familiar doctrine of equity that he who seeks equity must do equity, and the instances are numerous where a court of equity will refuse relief which would not comport with equity. Comstock v. Johnson, 46 N. Y. 615; Williams v. Fitzhugh, 37 N. Y. 444; Mansfield v. Sherman, 81 Me. 365, 17 Atl. 300; Kinney v. Va. Mining Co., 4 Sawy. 382, Fed. Cas. No. 7,827. Plaintiff's building not being within the frontage provisions, and the meter charge not being unreasonable, on the above doctrine of "he who seeks equity must do equity," plaintiff is not entitled to the relief prayed.

[7] Moreover, it is a fundamental canon of equity jurisdiction that its aid cannot be invoked where there is an adequate remedy at law by mandamus or otherwise. Demarest v. Wickham, 63 N. Y. 320. If plaintiff is aggrieved it has an adequate remedy by mandamus to compel the furnishing of water (Hammerstein v. Monroe, 41 Misc. Rep. 198, 83 N. Y. Supp. 995), or, if the meter is installed, by defense to an action for the water rents. Herrmann v. O'Brien, 138 App. Div. 780, 123 N. Y. Supp. 752. On this ground, if no other, the complaint should be dismissed. If, after a meter is installed, in case a bona fide dispute should arise and defendant seeks to cut off the water, instead of determining it by action in the courts, a different question would be presented under the doctrine of Sickles v. Manhattan Gas Light Co., 64 How. Prac. 33; Richman v. Consolidated Gas Co., 114 App. Div. 217, 100 N. Y. Supp. 81; but such question is not here involved.

[8] Moreover, there can be no doubt that under the powers vested in the commissioner of water supply, gas, and electricity under section 469 of the charter, and the provisions of section 478, that such officer has power to make reasonable regulations to secure the collection of the revenues and proper use of the mains and appliances for distribution of water, and to prevent an undue waste thereof, and to enforce the same. Herrmann v. O'Brien, 138 App. Div. 780, 123 N. Y. Supp. 752.

[9] Among the regulations adopted it is provided that the use of a hose is only allowed where the premises are metered, and similar provisions are made respecting the use of rams, engines, syphons, and

other appliances requiring for their operation the pressure of the city's mains. It is also provided that those using water must keep their pipes in repair and prevent waste, and on the back of the permit it is stated that the penalty for the violation of the regulation shall be the cutting off of the water *or the placing of a meter in addition to other prescribed penalties.* In this case there was some evidence tending to show instances of pipes or appliances being out of repair, resulting in much waste of water, and the use of a hose and of city water in connection with the pumping of the salt water for the refrigerating plant, which, in connection with the arrangement of the plant, might well bring the case within the above provisions. I cannot say that such regulations are unreasonable, and what methods thereunder may be necessary in any particular case.

[10] To prevent waste and secure proper use of the water might well be within the reasonable discretion of the defendant, and a court of equity will not, in the absence of abuse, interfere with the exercise of lawful discretion. Am. Mfg. Co. v. City of New York, 132 App. Div. 900, 116 N. Y. Supp. 1130. It is not, however, in view of what has been above said, necessary to pursue this subject further.

On all grounds above mentioned, judgment for defendants. Submit findings.