Abraham J. Gellinoff, J.
This is a motion for an order: (1) declaring void a resolution of the Board of Estimate, adopted at its meeting of June 23, 1966, which increased certain water and sewer rates, and (2) enjoining the City Comptroller from attempting to collect the increases.
The proceeding is brought by Vito P. Battista and United Taxpayers Party, Inc. Battista alleges that he is the owner of real property affected by the increases and that his copetitioner is an organization comprised of thousands of owners of real property similarly affected.
Section 734 of the New York City Charter confers jurisdiction upon the Department of Water Supply, Gas and Electricity to make rules and regulations, “ subject to the approval of the board of estimate ”, fixing annual charges for the supply of water. Section 683a4-9.0 of the Administrative Code of the City of New York provides for “ sewer rents ” to be paid by owners of property “connected with the sewer system” (§ 683a4-9.0, subd. b). It authorizes the Commissioner of Water Supply, Gas and Electricity to fix the 1 ‘ sewer rents ” at an amount equal to “ one-third of the charges for water supplied to such property” from the city’s water supply system (§ 683aL-9.0, subd. b, par. 2).
On June 20, 1966, the Acting Commissioner of Water Supply, Gas and Electricity informed the Mayor that he had promulgated an amendment to the rules and regulations fixing water charges and requested that the amendment be submitted to the Board of Estimate for its required approval. The general effect of the amendment was to double the frontage and extra and miscellaneous water charges and to increase the sewer rents which are fixed at one third of the water charges. The request for approval of the amendment was included in the board’s printed calendar for its June 23, 1966 meeting and bore calendar No. 347. The printed calendar was on file and open to public inspection in the office of the Secretary of the board on and after June 21,1966.
Although Mayor Lindsay was present at 10:50 a.m. when the meeting of June 23 commenced, calendar No. 347 was not reached until after midnight, about 13 hours later. By that time, the Mayor had left the meeting, and Robert W. Sweet, Executive Assistant to the Mayor, had taken his place as chairman of the *964 meeting. Aji executive order of the Mayor had been filed with the City Clerk and the Board of Estimate on January 10, 1966, purporting to authorize Sweet “ to sit and act for me [the Mayor] at any and all meetings of the Board of Estimate at which I am not present.” When the item bearing calendar No. 347 was reached, petitioner Battista, on behalf of the copetitioner, was heard in opposition to approval of the proposed amendment, as was one Grace Liota, representing the Independent Property Owners’ Association. The resolution calling for approval of the proposed amendment was then adopted.
Petitioners contend that the proposed amendment was not validly adopted because: (1) neither the Mayor nor the President of the City Council presided at the meeting of June 23 at the time the resolution for approval was considered and passed; (2) inadequate notice of the meeting was given to property owners; and (3) neither the Department of Water Supply nor the Board of Estimate, “ both branches of the executive ”, had the power to raise the water and sewer taxes — an exclusively legislative function. These objections of the petitioners will be discussed seriatim.
It is true that section 63 of -the present Charter, which took effect January 1, 1963, provides that “ the mayor, or in his absence the president of the council, shall preside at all meetings ” of the Board of Estimate. However, section 3 of the Charter expressly empowers the Mayor, by executive order, to “delegate to * * * any member of said office [the executive office of the Mayor] specified functions, powers and duties, except his power to act on local laws or resolutions of the council, to act as a magistrate or to appoint or remove officials ” (emphasis supplied). The Mayor’s power to delegate his functions is thus subject to only three specified exceptions, none of which includes his duty to act as presiding officer at meetings of the Board of Estimate. Many of the other duties of the Mayor under the Charter are also expressed as duties which the Mayor “ shall ” perform. The provisions imposing said duties must, however, be read in conjunction with the provision of section 3, expressly conferring on the Mayor the power to delegate all but three of his powers to any member of his executive office. The established rule of statutory construction, known as “ expressio unius est exclusio alterius ” (the specific mention of one person or thing implies the exclusion of other persons or things), requires a holding that the Mayor’s power to delegate is subject only to the three specific exceptions set forth in section 3 of the Charter, and to no others. Section 63 of the Charter, in the light of the Mayor’s power to delegate his duties, must, *965 therefore, be read as providing that “ the mayor [in person, or by any member of his executive office to whom he may delegate such duty], or in his absence the president of the council, shall preside at all meetings.”
The soundness of this view is confirmed by the statements made in the affidavit of Reuben A. Lazarus, who served as counsel to the Charter Revision Commission of 1961, which formulated the 1963 Charter and submitted it to the electorate of this city. Mr. Lazarus declares that it was he who drafted section 3 of the Charter at the direction of the commission, with the intent to include among the delegable powers and duties of the Mayor the function of presiding at meetings of the Board of Estimate, and to exclude — as exceptions to the Mayor’s power of delegation — only the three powers expressly listed in section 3.
Mr. Lazarus points out that the 1936 Charter, which preceded the one now in effect, was very different in its provisions for delegating the Mayor’s powers and functions. Section 9 of the 1936 Charter, which authorized the Mayor to appoint a Deputy Mayor, expressly excepted from the Mayor’s right to delegate powers to the deputy mayor the ‘ ‘ power to hold any hearing which the mayor is required by law to hold personally and it also contained the three exceptions which have been continued in section 3 of the present Charter. Mr. Lazarus points out that the elimination in the 1963 Charter of the prohibition against delegating the Mayor’s function of presiding at hearings was deliberately designed to permit such delegation.
The 1963 Charter, as Mr. Lazarus demonstrates, vastly increased the powers, duties and responsibilities of the Mayor and correspondingly reduced the powers of the Board of Estimate. Because the Charter Revision Commission recognized that, without an increase in the Mayor’s power to delegate his duties and functions, it would be very difficult if not impossible for him to discharge his increased responsibilities, the new Charter, at the same time that it widened and enlarged the Mayor’s duties, also enlarged his powers of delegation and abandoned the provision in the former Charter restricting the Mayor from delegating the power to preside at hearings at which he was required to preside.
The view that the Mayor may validly delegate to a member of his executive office the power and duty to preside at Board of Estimate hearings has been uniformly followed ever since the Charter took effect. It was questioned for the first time only a few months ago. In this court’s opinion, it is clear that the present Charter permits the Mayor to delegate his duty to *966 preside at meetings of the Board of Estimate. Petitioners ’ contention that the passage of the resolution approving the amendment of the water regulations was invalid, because Robert Sweet, rather than the Mayor, presided over the meeting at the time, is, accordingly, overruled.
In the light of what has been said, there is no need to consider respondents’ contentions: (1) that even if the delegation to Mr. Sweet of the duty to preside was invalid, his presiding, with the acquiescence of the board, was valid under the rules of parliamentary procedure, and (2) that Mr. Sweet, having presided in good faith and under color of right, without objection from any member of the board, was a valid de facto presiding officer.
Petitioners’ second claim is that inadequate notice of hearing was given. Subdivision 4 of section 67 of the Charter requires the Board of Estimate to hold hearings “whenever requested by the mayor or required to do so by this charter or other provision of law or whenever in its judgment the public interest will be benefited thereby.” There is no Charter or other statutory requirement that the board hold hearings as to whether or not to approve proposed amendments of regulations adopted by the Department of Water Supply, Gras and Electricity. As there was no request from the Mayor that it hold such hearings, the hearing permitted by the Board of Estimate at its June 23, 1966 meeting was a discretionary one on its part. In these circumstances, since petitioners and others had no statutory or other right to a hearing, no complaint can validly be made that the notice of the hearing which was given, was inadequate (cf. Matter of Greenfield v. Moses, 169 Misc. 389, 391). The imposition of water charges and sewer rents for the privilege of using municipal water and sewer systems has been held to be valid though accomplished without notice and an opportunity to be heard (Silkman v. Water Comrs. of City of Yonkers, 152 N. Y. 327; L. X. Corp. v. City of New York, 201 Misc. 400, affd. 281 App. Div. 860; Parsons Constr. Corp. v. City of New York, 163 Misc. 932). It follows that the hearing granted to petitioners and others on June 23, 1966 was accorded as a matter of grace and courtesy only, and that petitioners may not properly complain about the alleged inadequacy of the notice. It may not be amiss to observe that petitioners were in fact heard in opposition to the resolution as to the water charges before it was adopted by the Board of Estimate.
The contention that neither the Department of Water Supply nor the Board of Estimate had the power to increase the water and sewer charges is equally without merit. The imposition of *967 water and sewer rates does not constitute taxation but rather the exercise of the powers of a public utility to charge for benefits supplied in the form of water and sewer systems and this is so notwithstanding that, in actual practice, the penalties and consequences for failure to pay water and sewer rates may be similar to those applicable for failure to pay land taxes. The Court of Appeals observed in the Silkman case (supra, pp. 330-331) that there is “ a clear distinction between rents paid for water actually furnished by a corporation and used by an individual, and the payment of a sum in the nature of a tax for an anticipated benefit arising from the presence of water in the city.” Indeed, that court plainly said that it “ cannot be properly said that rents which are charged for water actually used are, in any just sense, taxes ”.
Moreover, article IX (§ 1, subd. [f]) of the New York State Constitution, expressly provides that: “No local government shall be prohibited by the legislature (1) from making a fair return on the value of the property used and useful in its operation of a gas, electric or water public utility service, over and above costs of operation and maintenance and necessary and proper reserves, in addition to an amount equivalent to taxes which such service, if privately owned, would pay to such local government, or (2) from using such profits for payment of refunds to consumers or for any other lawful purpose. ” This constitutional provision (and its predecessors), therefore, clearly confirms the validity of section 734 of the Charter and section 683a4 — 9.0 of the Administrative Code, pursuant to which the water regulations were enacted and amended and the sewer rent increases effected.
The petition contains no allegation, as such, that the increases in water and sewer charges would yield the City of New York a return in excess of that permitted by section 1 of article IX of the State Constitution. It is merely alleged that the 1965 receipts were about $64,000,000 and that the approximate cost of operation and maintenance is $30,488,716. Petitioners’ main brief does not elaborate upon this statement. An answering affidavit submitted by respondents claims that the revenues from water and sewer charges, even at the newly increased rates, will still leave the city with a deficit and that, in order to yield the “fair return ” authorized by the Constitution, a further increase of tens of millions of dollars will still be necessary. A reply affidavit submitted by petitioners attacks the qualifications of the person who made the affidavit as to the inadequacy of the city’s water and sewer charges, and annexes a report of the Citizens Budget Commission which states that “reliable and *968 up-to-date figures breaking down current water use by category are not available ’ ’ and then proceeds to analyze figures contained in a WPA-sponsored study made in 1940, more than twenty-five years ago. The report claims that the city obtains a surplus from its operation of the water system and that the surplus is used to pay for other items in the budget. This hearsay evidence, predicated upon figures more than a quarter of a century old, falls far short of establishing even prima facie that the water and sewer charges prior to the recent increase, yielded the city a surplus. A fortiori, there is no evidence to show that, even if there is a surplus, the surplus exceeds the fair return expressly permitted by article IX of the Constitution. As to the suggestion that water and sewer revenues are used, in part, to pay unrelated expenses of the city, it need only be observed that article IX of the Constitution expressly authorizes the city to use any profits derived from its ‘ ‘ water public utility service ” for “payment of refunds to consumers or for any other lawful purpose ” (emphasis supplied).
Petitioners, still relying on their thesis that water charges and sewer rents are “ taxes ”, complain that, for the city to be able to fix such ‘ ‘ taxes ’ ’, would constitute ‘1 an unconstitutional delegation of power from the state legislature through the city charter, there being no reasonable standard dictated by the state legislature to guide the city in its exercise of the aforesaid tax fixing power.” And they add to their complaint the allegation that, if the newly adopted sewer and water charges are added to the existing taxes upon real estate, the total would exceed the maximum rate of real estate tax which the city may levy. This contention overlooks the fact that, as previously pointed out, the water and sewer rates are not real estate taxes but rather charges for benefits conferred, and that the “ reasonable standard ’ ’ consists of such rate-making procedure as is not proscribed by the limitations contained in article IX.
The application to declare void the resolution adopted by the Board of Estimate and to enjoin its enforcement is denied.