Owen McGivern, J.
This is a motion by plaintiffs in this taxpayers ’ suit, pursuant to section 51 of the General Municipal Law, for a temporary injunction to restrain defendants, the City of New York and its Board of Estimate, and intervenordefendant New York University, from taking any action to effectuate a Board of Estimate resolution adopted August 25, 1966 authorizing an additional revision of the redevelopment plan for Washington Square Southeast by means of the approval of a technical change in the city map.
Present also is a cross motion by defendants to dismiss the complaint, for failure to state a cause of action under the aforesaid section of the General Municipal Law, which, because of the prolific evidentiary showing made by all parties, will be treated as a motion for summary judgment (CPLB 3211, subd. [c]).
The practical situation involves ' the desire of New York University to construct a much-needed library, in accordance with plans and specifications formulated by a world-famous architect and not previously enviságed, upon vacant land, including a strip of grassy land, some 40 by 200 feet in area, title to which is claimed by New York University, but which, pursuant to agreement, can be used by the city to widen West Broadway (also known as Fifth Avenue South), immediately south of Washington Square South and Washington Square Park.
Plaintiffs, on the other hand, because of a traffic ban through Washington Square Park, would like to see the three blocks of West Broadway, running south to Houston Street, and including *48 the plot of land here in issue, transformed into a “ Greenway ” or “a sort • of Champs Elysées' óf Lower Manhattan ”, as Commissioner of Parks Thomas P. F. Hoving recently described it in a statement opposing the proposed map change.
New York University, in response, however, has noted its agreement to provide a landscaped plaza, of a size larger than that envisaged for the “ Greenway ”, some 300 feet east of the subject strip. In addition, it has agreed to an independent appraisal of the said plot and to pay to the city fair value, because of the necessary modification of the original and amended redevelopment plan and the city map change required.
In this regard, it is noted that the city map revision is mandated (along with a modification of the redevelopment plan regarding height and set-back limitations), because, although an original 45-foot mapped widening of West Broadway (when plans were afoot for a traffic thruway through Washington Square Park) was passed, it was never physically effectuated. Accordingly, the actual map change, as approved by the Board of Estimate on August 25, 1966, merely reduces from 45 feet to 5 feet the future West Broadway widening, and adds 40 feet to the Educational Area in the northerly superblock reserved for such purposes.
With this background in mind, plaintiffs’ major contentions may be summarized as follows:
(1) Subject plot (denominated Parcel No. 1) is owned by the city and can be only disposed of by public auction, after the Board of Estimate finds that it is not needed for a public use;
(2) The redevelopment plan has been completed. The proposed revision is actually a new plan, which is governed by article 15, not former section 72-k, of the General Municipal Law. Therefore, certain prescribed procedures are required for adoption, which have not been met ;
(3) Even-if the original plan is still in effect, the Board of Estimate did not approve the. revision and map change by a three-fourths majority .vote, as required under the circumstances; and
(4) In any event, no such changes could be adopted within 350 feet of park property without the approval of the Commissioner of Parks. . • •
A judicious' perusal of the voluminous affidavits, documents and evidentiary matter, submitted, however, clearly demonstrates that plaintiffs ’: arguments are without merit, and that summary judgment dismissing their complaint must be granted against them, on. a variety of alternative grounds.
■It is. clear.to.- this court that New York University originally was granted, by,the- city a fee simple title to subject strip, *49 subject only to the city’s right to request a reconveyance for the purpose of widening West Broadway, and that New York University still retains such title today. Nor did a prior resolution of the Board of Estimate, approving a map widening of West Broadway, which was never effectuated, serve to divest New York University of this title. The mere map widening did not impose upon the city any duty to acquire title to the land, and no request was made to New York University for a reconveyance pursuant to the agreement. In fact, the original purpose of the entire clause in the agreement, namely, to conform to the then prevalent idea of a broad traffic roadway through Washington Square Park, was rendered moot when the park expressway plan was later abandoned.
Moreover, not only does the City not have any present title to the said land, it does not even appear to have an estate or an interest in such real estate. At the most, if New York University refused a city request to reconvey, the city would have a chose in action.
Accordingly, it was not required that subject strip should have been disposed of as city-owned property by public auction or otherwise. The city may properly require a fair recompense for its agreement to modify further the original redevelopment plan by consenting to a lessening of the street widening initially envisaged. Nor does the method, by which such valuation will be made by two independent appraisers, appear impractical, inequitable, unjust or illegal.
Therefore, since plaintiffs have failed to make any definitive showing of waste, as would be necessary to demonstrate a clear legal entitlement to the ultimate relief sought, they cannot, on this presentation, secure the drastic temporary relief now requested. Moreover, in such a taxpayers’ action as brought herein, not only must waste be shown, but also some illegal action. In this regard, plaintiffs ’ arguments are legally insufficient and are clearly contradicted by the evidence.
It is quite plain that the redevelopment plan was not completed prior to the enactment of article 15 of the General Municipal Law in 1961 and that the plan still has not been completed or terminated. The mere fact that the educational area was cleared and set with grass before 1961 demonstrates only that the “ clearance ” phase of the undertaking was then finished. Certainly, the “redevelopment” phase, much of which is yet to come, including even a library, as contemplated initially as a distinct possibility by the parties in their original agreement, has not been completed. Various amendments, revisions and modifications of the original redevelopment plan already have *50 taken place, in a determined effort by the parties to keep up with the practicalities of the times. The present modification is but another example. Other changes may be necessary in the future. In all events, to the extent the city chooses to act thereunder then, the redevelopment plan is still governed by former section 72-k of the General Municipal Law, and the procedures and actions undertaken by the Board of Estimate and the City Planning Commission in their hearings vis-a-vis the re-mapping and in the further modification of the plan were eminently proper, practical and legal.
Further, the action taken by the Board of Estimate in altering the city map was only legislative in nature. Plaintiffs, although sincere in their belief that their own choice of public use for the parcel in question is the proper one, may not legally requisition the courts to interfere in favor of their own proposals over equally proper public use plans of the Planning Commission and the Board of Estimate. The real issue herein then is not a question of waste but merely a difference of opinion as to the choice of public-benefit uses for Parcel No. 1. And, so long as the said governmental agencies have not been shown to have made their selection of public use in a corrupt manner or in bad faith, their choice is not subject to question herein or to court review.
Nor was the majority vote of the Board of Estimate in favor of the re-mapping improper under the circumstances. Subdivision b of section 199 of the City Charter gives the Board of Estimate the power to make city map changes by a three-fourths vote even though the City Planning Commission has failed to report thereon within a ten-week period. Where the commission does report thereafter, and before any action has been taken by the Board of Estimate, and where the board then votes in conformity with the Planning Commission recommendation, albeit belatedly made, a simple majority vote is clearly all that is required. (See Report of New York City Charter Revision Commission, Aug. 17, 1936 [New York City Charter and Administrative Code Ann., pp. vii, xiii, Williams Press, 1942 ed.]). It would be an illogical and impractical statutory interpretation to hold that a late report from the Planning Commission is completely invalid and that the Board of Estimate must act thereafter by a three-fourths vote, as if no such report had ever been received, especially when .there are often good and valid reasons for the Planning Commission to take extra time in careful evaluation of proposed changes in the city map.
Finally, not only did the Commissioner of Parks not veto the proposed map change herein, but he would have no power to do *51 so. Nor was it the legislative intention, in formulating subdivision 5 of section 532 of the City Charter, to give such an appointive executive officer power to override decisions of an elected legislative body. Indeed, the Commissioner has at no time made claim to such power and, in his appearance before the Board of Estimate, he merely voiced his recommendations along with other citizens. The very words of the said section, “ except as otherwise provided by law”, make manifest the limitations imposed on the power of the Commissioner of Parks in this regard. The Commissioner’s power over street lines and curbs relates to physical appearance and to the beautification of established streets and avenues, and not to the location or width of such thoroughfares on the city map, notably where they are only in the planning stage.
Accordingly, for all of the reasons stated, the motion must, in all respects, be denied, and the cross motion, treated as one for summary judgment, is granted. Settle order.