Arnold L. Fein, J.
Petitioner brings this proceeding under CPLR article 78, as a taxpayer, citizen and resident of the City and County of New York, to enjoin respondents from consummating an auction sale of premises 434 West 37th Street, commonly known as the “ Alimony Jail ”.
The gist of petitioner’s .arguments are: (1) the minimum or upset price at which the property could be sold was fixed at a sum far less than its actual value; (2) no hearings were held to permit members of the public to express their views, as to the advisability of the proposed sale; (3) inadequate public notice was given of the Board of Estimate meeting at which the resolution to direct the sale was adopted; and (4) in its deliberations regarding the sale, the board failed to give adequate consideration to the building’s intrinsic social, architectural and historical value and the feasibility of having it designated as an historical landmark and ultimately utilized for some educational, health care, charitable, recreational or other salutary purpose for the public benefit.
As to the first argument, it appears that notwithstanding the “ upset price ”, the bid ultimately accepted by the Department of Real Estate was in the sum of $107,000. No evidence has been presented which would even tend to suggest that this was not the “ highest marketable price ” obtainable within the purview of section 384 (subd. b, par. 1) of the New York City Charter. Accordingly, any question as to the propriety of the upset price fixed by the board is now academic.
Petitioner’s second claim is also without merit. Subdivision 4 of section 67 of the charter requires the Board of Estimate to hold public hearings, ‘ ‘ whenever requested by the mayor or required to do so by this charter or other provisions of law or whenever in its judgment the public interest will be benefited thereby.” There is no charter or other statutory requirement that the board hold public hearings regarding the advisability of sale of city-owned property of the kind here in question. There appears to have been no request from the Mayor that it do so in this case. Accordingly, such matter was entirely within the discretion of the board. Moreover, the matter of the authorization of the sale appeared on the board’s calendar for its *788 January 24,1974 meeting date. Such calendars are customarily published in the City Record and filed with the secretary of the board at least several days prior to the meeting date. The matter also appeared on the published calendars of the board for its meetings on October 25,1973, November 15,1973, December 20, 1973, December 26, 1973 and January 10, 1974. All of these meetings were open to the public. In any event, since petitioner had no statutory or other right to a public hearing, no complaint can validly be made that the notice of the hearing which was given was inadequate (Matter of Battista v. Board of Estimate of City of N. Y., 51 Misc 2d 962, affd. 27 AD 2d 986).
Petitioner’s final argument likewise must be rejected. The Board of Estimate is vested by the City Charter and Administrative Code with exclusive authority and discretion to decide whether to .sell the subject property (see New York City Charter, § 384, subd. b, par. 1 [1938]; Administrative Code of City of New York, ■§ 384 — 3.0; Matter of Moran [Duchan], N. Y. L. J., June 30, 1972, p. 12, col. 1). Its resolution approving such sale was essentially legislative in character (10 McQuillin, Municipal Corporations [3d ed.], § 28.44b [1966]; Goldin v. Town of Hempstead, 63 Misc 2d 726; Jacobs v. City of New York, 54 Misc 2d 46, 50, affd. 28 A D 2d 668; see Port Auth. of Allegheny County v. Flaherty, 6 Pa. Commonw. 135). As held in Goldin and Jacobs (both supra), the court may not attempt to substitute its judgment for that of the board in the absence of a clear demonstration of fraud, corruption or bad faith. A claim of bad judgment does not amount to a claim of bad faith. Here, not only are petitioner’s papers devoid of any such showing, but it is evident therefrom that the real issue is not, as he asserts, a question of irresponsibility or malfeasance, but merely a difference of opinion as to whether the property should be sold and returned to the tax rolls or put to some public-benefit use. Accordingly, the board’s choice may not be disturbed by the court.
Moreover, determination of the question of whether the “ alimony jail” has such characteristics as might qualify it for designation as a city landmark is a matter solely within the province of the Landmarks Preservation Commission. Although it might be desirable for the board to make inquiry of the commission, there is no requirement that the Board of Estimate seek or await any such determination before resolving to dispose of surplus city property. The only condition prece *789 dent to the sale of such property is that set forth in section 384-2.0 of the Administrative Code; viz., that the board “ shall determine that .such real property is no longer required for the public use.” The board does this after appropriate inquiry among city agencies. Such finding was made in this case and the board’s resolution so states. If petitioner believes that these premises are worthy of designation as a landmark, his proper remedy, if so advised, is by way of an application to the Landmarks Preservation Commission for such relief, in accordance with the provisions of chapter 8 — A of the code. Since the commission is empowered to make such designations irrespective of whether the property is in public or private hands, such application may be made at any time.
The petitioner describes himself as “a taxpayer, who is the president of the Committee for Fair Divorce & Alimony Laws, an unincorporated association.” He outlines the history of the building, .originally as a police precinct and subsequently as the civil prison of the City of New York, until June, 1973.
The court is not unmindful of its notorious use as a civil prison for men committed for failure to pay alimony, or for housing material witnesses in criminal cases or sometimes as a place of commitment of well-known union leaders found in contempt of court for violating court orders respecting strikes or even as an occasional remand center for immigrants. It gained such notoriety because of the issues involved, the personalities of some of those committed and its uninhabitable living conditions and building code violations, hardly appropriate to its use. Presumably such history gives it a kind of landmark and historical value. It may even have special architectural attributes. Nostalgia gilds much dross. Although, like slave markets, it may well be useful to maintain some structures as a reminder to a society of what it has done or left undone, such determinations are not for the courts. As has been frequently noted, they unfortunately have limited power even over the structures in which they are required to perform their public function.
The court’s views or the petitioner’s views, sentimental or otherwise, as to the value of retaining such a structure as an historical monument or converting it to some other public use cannot be utilized as a substitute for the presumably considered judgment of the Board of Estimate.
Finally, it must be concluded that petitioner lacks standing to bring this proceeding. The rights he claims have been invaded by the action of the Board of Estimate are of a kind not pri *790 vate or peculiar to Mm alone, but possessed by all citizens and taxpayers of similar tastes and sensibilities. Absent any showing of special injury to his own personal or property rights, he may not assume to act as the guardian or protector of .the community’s social, cultural or aesthetic conscience (Matter of Donohue v. Cornelius, 17 N Y 2d 390; Schieffelin v. Komfort, 212 N. Y. 520 ; Matter of De Lia v. McMorran, 56 Misc 2d 205; Matter of Savino v. Lindsay, 72 Misc 2d 609; Calandra v. Lindsay, N. Y. L. J., Dec. 27, 1968, p. 17, col. 1). His reliance upon Matter of General Bldg. Contrs. of N. Y. State v. County of Oneida (54 Misc 2d 260) and Matter of Policemen’s Benevolent Assn, of Westchester County v. Board of Trustees of Vil. of Croton-on-Hudson (21 A D 2d 693) is misplaced. In both of these cases the petitioners were membership corporations seeking injunctive relief on matters of wide public interest, concern and impact and also of direct concern to their members. Here, no such interest is involved. Moreover, it should also be noted that, though petitioner’s actual grievance is against a resolution of the Board of Estimate, not even named as a party, the relief prayed for is essentially in the nature of a writ of prohibition against the Department of Real Estate, an inapproprate form of relief. (Matter of De Lia v. McMorran, 56 Misc 2d 205, supra.)
Accordingly, on all of the alternative grounds stated, the application is denied and the cross motion to dismiss the petition is granted.