The **FERTILE LAND, LTD.,** Plaintiff,

v.

Abraham **BEAME,** Harrison Goldin, Paul O'Dwyer, Percy Sutton, Howard Golden, Robert Abrams, Donald Manes, Robert Connor, Theodore Meekins, and Morris Tarshis, Defendants.

No. 77 Civ. 326 (HFW).

United States District Court, S. D. New York.

Oct. 6, 1977.

Dennis Grossman, New York City, for plaintiff.

W. Bernard Richland Corporation Counsel of the City of New York, New York City, for defendants; Alexander Gigante, Jr., Isaac Klepfish, Stephen P. Kramer, New York City, of counsel.

## OPINION

WERKER, District Judge.

The plaintiff is a prospective licensee of a sidewalk cafe in New York City and brings this action for declaratory and injunctive relief under 42 U.S.C. § 1983 (1970) in order to correct claimed deprivations of its rights under the due process clause of the fourteenth amendment. Jurisdiction is alleged under 28 U.S.C. § 1343(3) (1970). The defendants are the members of the Board of Estimate (the "Board") of the City of New York (the "City"), the secretary to the Board, and Morris Tarshis ("Tarshis"), an employee of the Board who serves as the Director (the "Director") of the City Bureau of Franchises (the "Bureau"), itself an agency of the Board. The action originally came before the court on defendants' motion to dismiss the complaint for lack of subject matter jurisdiction, or in the alternative for failure to state a claim upon which relief can be granted, Rule 12(b)(1), (b)(6), Fed.R.Civ.P., but the court has treated defendants' motion as one for summary judgment after due notice to the parties. Rule 12(b), Fed.R.Civ.P.

1. Section B32–54.0(a) of the Code provides, in pertinent part, as follows:

Any person owning, leasing, managing or operating [a] cafe [or] restaurant . . . upon property which abuts upon any street within the city may maintain or operate upon the sidewalk of such street in an area immediately adjacent to its premises, a sidewalk cafe, provided that such sidewalk cafe shall be licensed by the commissioner [of licenses].

2. The Code requires that sidewalk cafes be "licensed," but the Board apparently acts on an application to operate such a cafe by granting a "revocable consent." Memorandum in Support of Motion to Dismiss at 2. Since revocable consents seem to apply to structures markedly different from sidewalk cafes, such as tunnels and bridges, see New York City Charter ("Charter") § 374, throughout this opinion the court will refer to the right granted by the

## I

Plaintiff owns a restaurant in the Borough of Manhattan and since August of 1975 has operated an unlicensed sidewalk cafe as part of its business there. Plaintiff has applied for a sidewalk cafe license pursuant to § B32–54.0(a) of the New York City Administrative Code ("Code"),[1] but no action has been taken on that application, and it is being "held in abeyance pending resolution of the issues raised" herein. Defendants' Reply Memorandum on Motion for Summary Judgment at 3. The "issues raised" by plaintiff's complaint center on the adequacy of the hearing to be held when plaintiff's application for a sidewalk cafe franchise[2] comes up for consideration by the Board. Plaintiff contends that defendants will infringe upon his constitutional right to due process of law by not affording him an opportunity to address the Board when it considers his application in "executive session."

The procedure followed in processing an application for a franchise to operate a sidewalk cafe, briefly, is as follows. When an application for a sidewalk cafe license is received by the Board, it is sent first to the Bureau for investigation. As part of its investigation, the Bureau consults with the Department of Highways; if that agency agrees that a cafe would not impede pedestrian traffic,[3] the Bureau directs that the

Board as a "franchise." See Charter § 362, set forth, in pertinent part, in note 6 infra.

3. Section B32–54.0(b) of the Code provides that:

The commissioner of licenses, after consultation with the commissioner of highways and police commissioner, shall establish such rules, regulations, terms and conditions as he deems proper in respect to the granting and issuance of . . . licenses [for sidewalk cafes], priorities of rights between applicants for a license covering the same space, and operation and maintenance of any sidewalk cafe, to insure good order and to prevent undue obstruction of the sidewalk, which shall have the force and effect of law. All proposed locations for such sidewalk cafes shall be approved by the commissioner of highways.

Department of Consumer Affairs collect the required franchise fee.[4] (Tarshis affid. ¶ 5.) Thereafter, the Bureau makes a recommendation to the Board concerning disposition of the application.[5] (*Id.* ¶ 6.) The Board is also provided with a background report and a draft resolution in support of the Bureau recommendation. Authority to approve an application rests with the Board, however, and by law it must pass a resolution before any public street may be used for private purposes.[6] The Board therefore schedules a public hearing on each application once it has received the necessary supporting papers from the Bureau. (*Id.* ¶ 6.)

The Board holds a so-called "executive session" on the day before the public hearing in order to familiarize itself with the contents of the application. (Complaint ¶ 10; Tarshis affid. ¶ 7.) The Director may be permitted to discuss the application and the Bureau recommendation with respect to it during the executive session (Complaint ¶ 12, Tarshis affid. ¶ 7), but the applicant may not respond to the Director's presentation at that time. Nevertheless, the applicant is free to attend that session in accordance with New York's recently enacted "sunshine law," [7] and may comment on the merits of the application and the Bureau recommendation at the public hearing

which is generally held the very next day. (Tarshis affid. ¶ 7.)

## II

Plaintiff maintains that the Director will oppose its application for a sidewalk cafe franchise because it has refused to pay sidewalk cafe fees owed to the City by a prior unrelated tenant at the storefront that it leases and, for purposes of the instant motion, that allegation will be accepted as true. However, the complaint in this action questions neither the fairness of the Director's position on past due franchise fees, nor his practice of submitting a written report and draft resolution to the Board in executive session. Since plaintiff claims to have known of the Director's position on its application for quite some time, the court also need not consider the adequacy of the notice which it had. Thus, the only question presently before the court is whether the Director, as plaintiff's "adversary," can be given "substantial procedural rights and an opportunity to be heard" at both the executive and public sessions of the Board without affording plaintiff an equal opportunity to address both sessions of the Board. (Complaint ¶ 6.) Stated in other terms, the issue is whether plaintiff has a constitutional right to address the Board one day earlier than is now the rule.[8]

---

**4.** The fee actually has two components: a license fee of at least $50.00 payable to the Department of Licenses at the rate of $10 per table, Code § 1332–55.02(a), 55.0(a), and an additional franchise fee payable to the Board, Code § B32–55.1.

**5.** The local Community Board may also review the land use impact and implications of the application if it wishes. If the Community Board considers the land use impact insubstantial, however, it may waive both a public hearing and preparation of its own recommendation with respect to the application. Charter § 366–a. There is no indication that the Community Board made any recommendation regarding plaintiff's application.

**6.** Under section 362 of the Charter, the Board has:

". . . control of the streets of the city, . . . and . . . the exclusive power in behalf of the city to grant franchises or rights or make contracts providing for or

involving the occupation or use of any of the streets of the city, whether on, under or over the surface thereof, for railroads, pipe or other conduits or ways or otherwise for the transportation of persons or property or the transmission of gas, electricity, steam, light, heat or power, or the installation of transformer vaults, and to give the consent of the city to any franchise or right of any kind or nature whatsoever for or relating to the occupation or use of the streets of the city under the provisions of the constitution or of any statute.

**7.** See New York Public Officers Law §§ 93, 95 (McKinney Supp.1976).

**8.** At times, the Board elects to table an application for another scheduled hearing rather than considering it at the public hearing held the following day. Tarshis affid. ¶ 8. Any such postponement would not affect the underlying constitutional question, which is whether plaintiff has a due process right to be heard at the

The problem as plaintiff sees it is that "members of the Board often do *not* attend the *public* session, but often *do* attend the *executive* session where they vote on the matters before the Board." Plaintiff claims that "Board members usually have bureaucratic functionaries take [their] places at the public session," rather than attending in person. Consequently, in plaintiff's opinion, "an opportunity to address the public session of the Board is virtually no opportunity at all, since the opportunity arises only when the purpose is gone." Memorandum in Opposition to Motion to Dismiss at 12. With this view, the court disagrees.

At the outset, the court notes that each elected official who is a member of the Board (except the Vice-President of the City Council) is authorized to delegate his duties on the Board to specified assistants who may then act in his stead. *See Battista v. Board of Estimate,* 51 Misc.2d 962, 274 N.Y.S.2d 729 (Sup.Ct.1966), *aff'd,* 27 A.D.2d 986, 281 N.Y.S.2d 976 (1st Dep't 1967); Charter §§ 3, 7, 23(c) and 82(1). Plaintiff will therefore be given an opportunity to speak before a governmental agency which will be fully empowered to take action, regardless of how many "actual" Board members may be present at the public session held to consider its application for a franchise. The question is whether that one opportunity is adequate under the circumstances.

"The very nature of due process negates any concept of inflexible procedures universally applicable to every imaginable situation." *Cafeteria & Restaurant Workers Union, Local 473 v. McElroy,* 367 U.S. 886,

895, 81 S.Ct. 1743, 1748, 6 L.Ed.2d 1230 (1961). A hearing must, of course, be afforded "at a meaningful time and in a meaningful manner," *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965), but the requisite procedural safeguards depend on the nature of the governmental function involved and the substance of the private interest which is affected by the governmental action. *Goldberg v. Kelly,* 397 U.S. 254, 263, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Cafeteria & Restaurant Workers Union v. McElroy, supra; Escalera v. New York City Housing Authority,* 425 F.2d 853, 861 (2d Cir. 1970).

Here, the governmental function in question is one which is basic to municipal government since the Board is charged with responsibility for control of the City's extensive system of streets and has exclusive power to grant franchises to use the streets for private purposes.[9] In carrying out this function, the Board acts not only as a bureaucratic agency, but as a trustee for the public in order to ensure that the public's right to free and equal access to the streets is not unduly impeded. *McCoy v. Jordan,* 241 N.Y. 71, 77, 148 N.E. 793, 794 (1925); *Acme Realty Co. v. Schinasi,* 215 N.Y. 495, 502, 109 N.E. 577, 579 (1925); *Deshong v. City of New York,* 176 N.Y. 475, 483, 68 N.E. 880, 882 (1903). Shadowed against this responsibility stands plaintiff's interest which is, as defendants correctly observe, merely prospective.[10]

Surely it cannot be considered improper for the Board to seek background information on proposed franchises in advance of the public hearing given the extensive re-

executive session, even though it will eventually be able to argue its case during the public hearing before the Board.

**9.** Under article IX, section 2(c)(6) of the New York State Constitution, local governments are empowered to pass laws regulating the "acquisition, care, management and use" of their roads, streets and avenues. In New York City, it is the Board which is charged with this function. *See* note 6, *supra.*

**10.** While plaintiff contends that the Board "routinely grant[s] franchises meeting other-

wise applicable legal requirements, *see* Memorandum in Opposition to Motion to Dismiss at 9, it is agreed that the Board does so in its discretion. Board resolutions approving cafes also expressly reserve the Board's right to revoke the franchise granted therein at will and provide that franchises cannot be transferred from one lessee to another without the Board's written consent. *See e. g.* Cal. No. 61 (June 11, 1976), Journal of Proceedings of the Board of Estimate of the City of New York, Mar. 20–June 24, 1976.

sponsibilities that the Board has in this and numerous other areas. *See generally Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 45 L.Ed.2d 712 (1975). Even though the Board's administrative procedures arguably combine both investigative and adjudicative functions in the same persons, it must be presumed that any hearing held by the Board will be fair. *Id.* at 47, 95 S.Ct. 1456; *see Simard v. Board of Education,* 473 F.2d 988, 993 (2d Cir. 1973). Plaintiff has not set forth any facts which would overcome that presumption.

What plaintiff really seeks is an opportunity to address the Board at the time that it considers optimal. But the demands of due process do not require a hearing at any particular point in time so long as an adequate hearing is held before any final action is taken. *E. g., Opp Cotton Mills v. Administrator,* 312 U.S. 126, 152–153, 61 S.Ct. 524, 85 L.Ed. 624 (1941); *Madera v. Board of Education,* 386 F.2d 778, 785 (2d Cir. 1967). Here, that standard is clearly met, for the Charter expressly affords the public, and therefore the applicant, an opportunity to be heard on any resolution before it is put to a final vote.[11] More cannot be required since the Board need not afford any person appearing before it two hearings on the same issue. *Goldberg v. Kelly, supra,* 397 U.S. at 267 n. 14, 90 S.Ct. 1011. The constitutional requirement of due process is, after all, only a guarantee of fundamental fairness, not an equal time clause. *See Buchalter v. New York,* 319 U.S. 427, 63 S.Ct. 1129, 87 L.Ed. 1492 (1943).

Summary judgment is therefore granted to the defendants and the complaint is dismissed.

SO ORDERED.

---

11.  Under section 62(c) of the Charter, members of the general public must be afforded an opportunity to be heard prior to a final vote by the Board on any resolution or amendment of resolution.