*511 OPINION OF THE COURT
Martin Schoenfeld, J.
"Government is a trust, and the officers of the government are trustees, and both the trust and the trustees are created for the benefit of the people.” (Henry Clay, statesman.)
This application, initially for a preliminary injunction, has on consent by all parties now been converted to one for summary judgment. (See, Oil Heat Inst. v Town of Babylon, 156 AD2d 352 [2d Dept 1989]; CPLR 3212 [b].) Further, on consent, the submitted papers are to be considered as an agreed statement of facts. (See, CPLR 3222.)
In what may very well be the last decision under the old New York City Charter the issue presented is as follows: To avoid a possible conflict of interest can the Mayor and City Council President legally delegate to others their authority to sit on the Board of Estimate for the purpose of voting upon a cable franchise renewal application? For the reasons stated below the court finds that they can.
THE FACTS
On June 27, 1990 the Board of Estimate of the City of New York voted to approve the renewal applications for two cable franchises, Manhattan Cable Television, Inc., servicing the southern part of Manhattan, and Paragon Communications, which services the northern part. These franchises, having an estimated value of $1 billion, are substantially owned by Time Warner, Inc. Plaintiff Edward R. Kayatt, publisher of Our Town newspaper, is a New York City taxpayer and subscriber of Manhattan Cable Television. In the past Our Town has reported about customer dissatisfaction with Manhattan’s cable franchises. By this lawsuit Mr. Kayatt seeks a judgment declaring that defendants Mayor David N. Dinkins and City Council President Andrew J. Stein should not have been allowed to delegate their authority to vote on the cable renewal applications.
Defendants, David N. Dinkins and Andrew J. Stein, were members of the Board of Estimate. Under the former New York City Charter, which was replaced as of July 1, 1990, the franchise process was concentrated in the Board of Estimate and its bureau of franchises. The members of the Board of Estimate consisted of the Mayor as chairperson, the Comptroller and the City Council President, each having two votes, and *512 the five Borough Presidents, each having one vote. (See, former NY City Charter §§61, 62 [hereinafter referred to as Charter. Unless otherwise stated, references are to the former Charter].)[1] Approval of any franchise contract required a three-fourths vote of the Board. (See, Charter §§ 372, 62 [c].)
The families of both defendants have certain financial interests in companies related to Timer Warner, Inc. Simply stated the Mayor’s son has a percentage interest in the Inner City Broadcasting Corporation. This is one of the Queens cable franchises which, through various joint ventures, is partly owned by a Time Warner subsidiary. The Council President’s father and brother own shares in Price Communications Corporation and his brother also publishes two periodicals for that company. Recently Time Warner, Inc. entered into an agreement to acquire a part interest in a Price subsidiary which also entitles it to receive warrants to purchase stock in the parent company.
As a result of these interests, defendants asked the Conflicts of Interest Board of the City of New York[2] whether their participation as members of the Board of Estimate with respect to the cable franchise renewal applications would pose *513 a conflict. By separate but similar written opinions dated April 16, 1990 the Conflicts of Interest Board concluded that chapter 68 of the Charter required defendants to recuse themselves from such activity.[3] It was then suggested in the opinion letters that "to the extent permitted by law” this authority be delegated. However the Conflicts of Interest Board did not consider nor take a position as to whether such a delegation of duty was legally permissible.
Defendants then sought the advise of the Corporation Counsel who, in an opinion letter dated April 18, 1990 stated that sections 8 (f) and 24 (d) of the revised Charter empowered them to delegate their authority regarding the franchise vote. The Corporation Counsel did however caution defendants that in light of the conflict of interest finding, they should insulate themselves by directing that such delegees not consult with them, but rather "exercise independent judgment and discretion”. Thereafter the Mayor appointed Deputy Mayor Milton Mollen as his designee while Mr. Stein chose former Deputy Mayor Stanley N. Brezenoff to act in his place; and the vote was taken.[4]
THE CONTENTIONS
While plaintiff does not question the integrity of defendants’ designees, it is his concern that the appearance of a conflict remains where public officials upon recusing themselves then delegate their voting power to others. Plaintiff further contends that the Charter did not provide for the delegation of authority to vote, that a delegation of duty by defendants with the instruction that independent judgment be exercised was *514 contrary to the proper operation of city government and that good government required each member of the Board of Estimate to be held accountable for his or her own vote.
Defendants argue that the Charter gave them broad power to delegate their duties including the right to vote on the Board of Estimate, or that alternatively at least, it did not prohibit such delegation. Defendants also contend that without their votes the Board of Estimate would have been effectively barred from taking any action on the franchise renewal applications since a three-fourths vote was required to pass a resolution. It is therefore defendants’ position that if for no other reason, then as a matter of necessity the delegation was proper to avoid obstruction of the orderly function of city government.
THE LAW
Concededly the Charter provisions do not expressly provide for the delegation of authority when the Mayor and City Council President recuse themselves from acting, nor are there any cases directly on point. However section 8 (f) of the revised Charter does provide in pertinent part as follows: "The mayor may from time to time * * * delegate to * * * any member of said office, specified functions, powers and duties, except the mayor’s power to act on local laws or resolutions of the council, to act as a magistrate or to appoint or remove officials.”
In Battista v Board of Estimate (51 Misc 2d 962, 964 [NY County 1966], affd 27 AD2d 986 [1st Dept 1967]) it was found that the Mayor properly delegated his assistant to chair a Board of Estimate meeting, Justice Gellinoff stating: "The established rule of statutory construction * * * requires a holding that the Mayor’s power to delegate is subject only to the three specific exceptions * * * and to no others” (emphasis added). Likewise none of these three exceptions — the Mayor’s power to act on local laws or resolutions of the council, to act as a Magistrate or to appoint or remove officials — are relevant to the present case.
With regard to the Council President, section 24 (d) of the revised Charter states in pertinent part as follows: "The president of the council may * * * designate any two officers or employees appointed by the president to exercise the powers in this subdivision. Either such officer or employee, so designated, may act in the place of the president of the *515 council on any board, body or committee, other than the council, of which the president of the council is a member whenever the president of the council shall be absent from a meeting of said board, body or committee for any reason whatever” (emphasis added).
Where, as here, the statutory language is clear: "[T]he court should construe the statute to give effect to the plain meaning of the words used”. (Eaton v New York City Conciliation & Appeals Bd., 56 NY2d 340, 345 [1982].)
In contrast to sections 8 (f) and 24 (d) of the revised Charter which seem to permit a broad delegation of powers, the Charter contains various other provisions specifically stating those situations where a public official is precluded from delegating a duty. Thus for example certain city contracts not made by competitive sealed bids require the approval of the Mayor or his Deputy. In those instances section 317 (b) of the revised Charter clearly states: "The mayor or deputy mayor shall not delegate the authority to make such approvals to any other body or official.” Another example is section 35 (a) of the revised Charter, with respect to certain votes by the City Council, which states: "On the final passage of a local law * * * the question should be taken by ayes and noes * * *. No such vote may be cast except by a council member who is present and who casts his or her own vote”. Regarding the issue at bar however nowhere in the Charter is such restrictive language similarly contained except as previously mentioned with regard to the Mayor’s action on local laws and resolutions, acting as a Magistrate and appointing or removing officials.
As noted in the case of Matter of Deth v Castimore (245 App Div 156, 160 [4th Dept 1935]): "As a general rule an express exclusion eliminates all others. That which is not clearly embraced within the named exception remains within the scope of the principal provision.” (See, Strauch v Town of Oyster Bay, 263 App Div 833 [2d Dept 1941].)
Further since as previously noted, defendants each had two votes on the Board of Estimate and a three-fourths vote was required to take any action concerning a franchise agreement, unless defendants could delegate this power the Board would have been unable to take any action regarding the cable renewal issue. City business should not be so totally obstructed. Thus as a matter of necessity the delegation of power was permissible in order for the Board to be able to conduct *516 its regular affairs. In this regard reference is made to Matter of Morgenthau v Cooke (56 NY2d 24 [1982]) and Komyathy v Board of Educ. (75 Misc 2d 859 [Dutchess County 1973]) which discuss the "rule of necessity.” (See also, 4 McQuillin, Municipal Corporations § 13.35 [3d ed 1985] [stating at 726: "Where an administrative body has a duty to act upon a matter which is before it and is the only entity capable to act in the matter, the fact that the members may have a personal interest in the result of the action taken does not disqualify them to perform their duty.”].) Here, by instructing their delegates to vote independently, it appears that defendants acted in good faith to both avoid a potential conflict while at the same time performing their public function of ensuring that city business proceeded in a reasonable manner.
The question as to whether other than in the performance of routine duties, good government should permit a public official’s delegate to be in a position of possibly casting the deciding vote on important matters is not new. The issue was raised as early as 1940 in Sharkey v LaGuardia (259 App Div 557 [1st Dept 1940], affd 283 NY 725 [1940]). In that case Mayor LaGuardia authorized his Deputy to sit at Board of Estimate meetings whenever he was out of the city. This was challenged by the Vice-Chairman of the City Council who contended that when the Mayor was absent the Council President became acting Mayor and by succession, the Vice-Chairman then performed the President’s duties. As a result, it was argued that on such occasions the Vice-Chairman, a duly elected official, and not the Mayor’s designee should vote at Board of Estimate meetings.
In a 4 to 1 decision the majority, finding the issue to be strictly one of statutory construction, held that while in the Mayor’s absence the Council President was required to preside at Board of Estimate meetings,[5] he nevertheless voted in his own right and not as acting Mayor. The majority reasoned that by express provision of the Charter, with certain reservations not relevant to this case, the Council President could not exercise any powers of the Mayor which had been delegated to the Deputy Mayor. The opinion cited inter alia a portion of section 10 of the Charter which in pertinent part presently *517 reads as follows: "In case of the suspension of the mayor from office, the mayor’s temporary inability to discharge the powers and duties of the office of mayor by reason of sickness or otherwise, or the mayor’s absence from the city, the powers and duties of the office of mayor shall devolve upon the president of the council or the comptroller in that order of succession until the suspension, inability or absence shall cease. While so acting temporarily as mayor neither the president of the council nor the comptroller shall exercise * * * any power lawfully delegated by the mayor to a deputy mayor before the commencement of such suspension or, inability or before or after the commencement of such absence” (emphasis added). (Revised Charter § 10 [a].)
In addition to statutory construction and case law interpretation another reason for permitting the delegation of duties where as here a conflict of interest exists is that ultimately defendants, as elected officials, will still be held accountable for the decisions of their nominees. Thus if the electorate disapproves of defendants’ actions or the way their nominees voted they have a right to so voice their opinion at the next election.
CONCLUSION
For the above-stated reasons summary judgment is granted to defendants and the amended complaint seeking a declaration that the delegation of authority to vote was illegal and asking for other related relief is dismissed.
It should be noted in passing that by their effort to remain neutral while at the same time accepting ultimate responsibility, defendants made the best of a difficult situation in an area where guidelines are unclear. Although the Board of Estimate no longer exists, conflicts of interest issues will arise again under the new Charter as public officials often come from or have family in the private sector. It is therefore suggested that members of the Conflicts of Interest Board together with staff members from the Mayor’s office and the City Council explore the possibility of drafting specific rules of succession and delegation in advance of any further recusals.

. It should be noted that the United States Supreme Court in Board of Estimate v Morris (489 US 688 [1989]) held that the Board of Estimate’s structure, by which each Borough President had one vote, was inconsistent with the Equal Protection Clause of the Fourteenth Amendment because, although the boroughs have widely disparate populations, each had the same representation on the Board. As a result a Charter Revision Commission was formed which decided, effective July 1,1990, to replace the Board of Estimate with a revamped City Council. (See, Preface to the Revised Charter as proposed by the NY City Charter Rev Commn for consideration at the Nov. 7, 1989 General Election [NY Legal Publ Corp].)
The new Charter eliminates the Bureau of Franchises and establishes a Department of Telecommunications. Further under this revised Charter, a Franchise -and Concession Review Committee will have final approval of proposed franchises. This Committee consists of the Mayor, the Director of the office of Management and Budget, the Corporation Counsel, an additional appointee of the Mayor, the Comptroller and the Borough President from the borough in which the particular franchise is located (see, revised Charter §§ 1070, 373; also see, Costikyan and Cornfeld, New York City’s Charter: Franchises, Concessions and Revocable Consents, NYLJ, Mar. 21, 1990, at 1, col 1). Clearly then the issue presently before this court may likewise arise under the revised Charter as the Mayor again plays an integral role in the process of franchise approval.

. A Conflicts of Interest Board was created pursuant to section 2602 of the Charter and remains intact under the revised Charter. Its purpose is to guide public officials in determining what may constitute prohibitive conduct under the Charter provisions. (See, revised Charter § 2603.)

. Chapter 68, § 2604 (b) (2) and (3) of the Charter prohibits a public servant from directly or indirectly engaging in a private interest which is in conflict with the proper discharge of his or her official duties or from using the position as a public servant for private or personal advantage.

. On May 14,1990 this Judge signed plaintiffs order to show cause with a temporary stay of any proceedings relating to the franchise renewal application. However the Corporation Counsel filed a notice of appeal which pursuant to CPLR 5519 (a) (1) automatically stayed that determination. Thereafter on May 15, 1990 the Board of Estimate including the two delegees voted initially to withhold renewal pending further negotiations with the franchises concerning such terms as length of time, performance and service. In the interim this Judge, by order dated May 25, 1990 permitted the two franchise companies to intervene in the action and held several informal conferences in an unsuccessful effort to settle the lawsuit. As noted above, subsequently on June 27, 1990 the Board of Estimate again voted, this time approving the renewal contracts.

. Under the 1936 Charter the Deputy Mayor was specifically excluded from becoming the Chairman of the Board of Estimate. However in Battista v Board of Estimate (51 Misc 2d 962, 965 [NY County 1966], affd 27 AD2d 986 [1st Dept 1967]), noted above, it was held that this restriction was eliminated by a Charter revision in 1963.